Robert J. AFFELDT, et al., Plaintiffs,

v.

Magistrate James G. CARR, Defendant.

No. C85–1319.

United States District Court,
N.D. Ohio, E.D.

Nov. 5, 1985.

Robert Affeldt, St. Petersburg, Fla., for plaintiffs.

Robert S. Catz, Cleveland, Ohio, Terence J. Anderson, Coral Gables, Fla., Roger M. Synenberg, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

On October 2, 1985, this Court issued a brief order granting defendant's motion for summary judgment and dismissing plaintiff's complaint with prejudice. At that time, the Court stated that it would issue an opinion seasonably in order to state fully the grounds for its decision. In recognition of the important issues raised in this case and the Court's obligation to the litigants, the following opinion sets out the basis for the order of October 2, 1985.

## I.

On May 6, 1985, plaintiff filed the instant complaint, alleging violation of First Amendment rights of free speech and association, Fifth Amendment equal protection rights and Sixth Amendment rights to counsel and an "unbiased tribunal." Plaintiff, for himself and over 300 class members, alleges that Magistrate James G. Carr deprived them of their rights in the course of proceedings before him which occurred in September 1983. Plaintiffs pray for an injunction against the Magistrate prohibiting him from infringing upon plaintiffs' constitutional rights; a declaratory judgment that the Magistrate's actions were unconstitutional; and $6,000,000 in monetary damages plus reasonable attorney's fees and costs.[1]

On May 9, 1985, defendant moved to dismiss the case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 28, 1985, plaintiff responded to defendant's brief.

Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1343(4) (original jurisdiction "to recover damages or ... other relief under an Act of Congress providing for the protection of civil rights"); and 28 U.S.C. §§ 2201, 2202 (jurisdiction of "any court of the United States" to make declaratory judgments). Jurisdiction is proper in this Court.

## II.

Plaintiff is a former law professor who taught at various universities, including the University of Toledo, for eighteen years. He is a licensed attorney in the State of Ohio, who, in his own words, "practices Title VII law." Defendant, formerly a law professor at the University of Toledo Law

---

**1.** This case was originally assigned to Judge John Potter in the Western Division of the Northern District of Ohio. On May 1, 1985, however, Judge Potter and Judge Walinski transferred this case to the Eastern Division for reassignment on the grounds that their "close working relationship [with] Magistrate Carr would make it inappropriate for any of the judges of the Western Division to hear this action." On May 6, 1985, Chief Judge Frank J. Battisti was assigned the case.

School, has been a fulltime Magistrate of the United States District Court for the Northern District of Ohio, Western Division sitting in Toledo since September 29, 1979.

Plaintiff alleges that the Magistrate engaged in a "pattern and practice of dismissing class actions without an evidentiary hearing when disputed facts exist, of depriving plaintiffs and class members of their choice of counsel, of penalizing them when they exercise their constitutional rights of free speech and association." Complaint at 3. Specifically, plaintiff states that in September 1983, the Magistrate without providing plaintiff notice or an evidentiary hearing, disqualified the plaintiff as a class attorney in *Sharp v. Owens Corning Fiberglass*, C80–450. Plaintiff contends that the Magistrate's decision was based on the testimony of two perjured witnesses and that the Magistrate refused to reconsider when he learned the testimony had been recanted.

Plaintiff contends that in the same case, the Magistrate ordered the class representatives to "seek other independent counsel who would not speak to or associate with former counsel," namely, the plaintiff. Complaint at 4. Plaintiff interprets this action as a "gag order." He contends that when the law firm of Joseph W. Westmeyer, Jr. & Co., L.P.A. was retained, the Magistrate not only disqualified that law firm from acting as class counsel but also disqualified the plaintiffs from acting as class representatives.

In the second count of his complaint, plaintiff contends "[t]he Magistrate has entered into a conspiracy with three large law firms in the City of Toledo to dismiss all class action lawsuits in which the plaintiff is counsel or 'of counsel.' " Complaint at 5. Plaintiff contends these actions were dismissed without an evidentiary hearing with facts still in dispute and that the Magistrate adopted arguments and opinions wholesale from briefs of the parties opposed to plaintiff. In addition, plaintiff alleges that the Magistrate "has associated with members of the firms who have op-

posed the plaintiff in these class action suits and has permitted a member of one of these firms to represent his wife and still litigates before him." Complaint at 6.

Counts III and IV of the Complaint repeat charges of interference with the right to counsel and due process. In Count V, "plaintiffs contend the magistrate, by writing opinions denying class certification before evidentiary hearings, has interfered with the plaintiff and class members' constitutional right to an impartial tribunal." Count VI alleges that the Magistrate knowingly deprived plaintiffs of constitutional rights and "carried out such policy with a malicious intent to cause a deprivation of fundamental constitutional rights."

### III.

Defendant moves to dismiss with prejudice on the grounds that plaintiff has failed to state a cause of action. Specifically, defendant contends that the doctrine of judicial immunity warrants dismissal of the instant action and that there are adequate remedies at law, namely, appellate proceedings, which would permit plaintiff to receive redress of any injuries he may have sustained.

The Supreme Court has consistently held since 1868 that judges are absolutely immune from civil suits for damages. *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 13 Wall. (80 U.S.) 335, 20 L.Ed. 646 (1871); *Randall v. Brigham*, 7 Wall. (74 U.S.) 523, 19 L.Ed. 285 (1868). The doctrine was established "to protect the finality of judgments from continual collateral attack in courts of competing jurisdiction [footnote omitted] and to protect judicial decision-making from intimidation and outside interference." *Pulliam v. Allen*, 466 U.S. 522, 546–47, 104 S.Ct. 1970, 1983, 80 L.Ed. 2d 565 (1984) (Powell, J. dissenting). The immunity doctrine is based on the notion that the "burdens of litigation," including the time, costs, and anxiety expended in defending oneself in a suit, would pose a

threat to judicial independence and decisiveness. *Id.* at 548, 104 S.Ct. at 1984. However, while emphasizing that judicial immunity barred damage actions, see *Pulliam,* 466 U.S. at 536–39, 536 n. 15, 104 S.Ct. at 1978–79, 1978 n. 15, the majority of the Supreme Court held that judicial immunity does not bar prospective injunctive relief against a judicial officer. *Pulliam* specifically held that judicial immunity does not bar an award of attorney's fees against a judicial officer. *Id.* at 543–44, 104 S.Ct. at 1981–82.

Since plaintiff asks for both monetary and injunctive relief, this Court will first examine the issue of damages.

### A.

### JURISDICTION

■ The standards for the applicability of judicial immunity have most recently been restated in *Martinez v. Winner,* 771 F.2d 424, 434–36 (10th Cir.1985), and *King v. Love,* 766 F.2d 962, 965–68 (6th Cir.1985). The essential prerequisites to immunity are that the judge not act in the clear absence of all jurisdiction and that he be performing a judicial act. *Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331; *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288. The judge must have both subject matter jurisdiction of the matter before him and personal jurisdiction over the defendant. *Stump,* 435 U.S. at 357–59, 98 S.Ct. at 1105–06; *Bradley v. Fisher,* 13 Wall. (80 U.S.) 335, 351–52, 20 L.Ed. 646; *Cuiska v. City of Mansfield,* 250 F.2d 700, 702 (6th Cir.1957); *Kenny v. Fox,* 232 F.2d 288 (6th Cir.), *cert. denied sub nom., Kenny v. Killian,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956).

Hence, this Court must examine each of the acts complained of and determine whether the defendant was acting within his jurisdiction. In undertaking this inquiry, it must be noted that the "scope of a judge's jurisdiction must be construed broadly," *Stump,* 435 U.S. at 356, and that even though federal courts are courts of limited jurisdiction, federal judicial officers are absolutely immune from damages even if they act in excess of their jurisdiction. *King v. Love,* 766 F.2d at 967.

Plaintiff alleges that defendant engaged in misconduct in the case of *Sharp v. Owens Corning Fiberglass,* C80–450, which was filed in the United States District Court for the Northern District of Ohio, Western Division. Plaintiff is listed as counsel for plaintiffs in *Sharp.* The case, which was designated a class action seeking to enforce a claim of racial discrimination in employment under 42 U.S.C. § 1981 and Title VII, was filed on July 21, 1980. The case was assigned to district Judge Nicholas Walinski. The docket sheet indicates numerous filings in this action between July 1980 and April 1982. On April 21, 1982, Judge Walinski denied the preliminary injunction sought by plaintiffs. Plaintiff appealed to the Sixth Circuit Court of Appeals on April 28, 1982. On October 6, 1982, plaintiff filed a motion for recusal of Judge Walinski. On November 23, 1982, plaintiff's motion for recusal was denied. On December 1, 1982, plaintiff moved to transfer all discovery and non-dispositive matters.

On December 2, 1982, Judge Walinski granted plaintiff's motion to transfer all discovery and non-dispositive matters to the Magistrate. The Magistrate assigned to the judges of the Western Division is James G. Carr, the defendant in the instant case.

It was, then, by plaintiff's own motion that he consented to defendant's supervision and jurisdiction over his case. There appears to be nothing unusual in the way this matter was assigned to the Magistrate. Hence, plaintiff had consented to the Magistrate's jurisdiction. Furthermore, plaintiff admits in his Response to Defendant's Motion to Dismiss ("Response") that "it is acknowledged that the Magistrate has subject matter jurisdiction over the Title VII lawsuit...." Response at 11. Plaintiff goes on to state, however, that the Magistrate lacked subject matter jurisdiction to

issue the "disqualification and gag orders." *Id.*

Under 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or to permit maintenance of a class action. . . ." Subparagraph (B) goes on to state that "a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)."

The issuance of orders disqualifying counsel and the issuance of gag orders are indeed pretrial matters which do not fall within the exception of 28 U.S.C. § 636(b)(1)(A). The Magistrate, therefore, had subject matter jurisdiction to issue such orders.

## B.

### JUDICIAL ACTS

Plaintiff, however, argues that "[s]ince the disqualification and gag orders were not preceded by an evidentiary hearing . . . these acts by the Magistrate were non-judicial in nature. . . ." Response at 8. The standard for determining whether an act is "judicial" was set out in *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331, as "one relat[ing] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Using these two factors, it is clear that the magistrate's acts were indeed "judicial" in nature since the issuance of gag orders and rulings on counsel's continued representation of a client are both prerogatives of a judge. ▮ The thrust of plaintiff's contention, however, is that since the defendant did not conduct an evidentiary hearing prior to making his decisions, these decisions were based on prejudice. In the first instance, a judicial officer is not required to hold a hearing prior to issuing a gag order. Gag orders fall within the Court's prerogative to maintain appropriate decorum in the administration of justice and protect the rights of the litigants from prejudice. *See Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *In re Oliver*, 452 F.2d 111 (7th Cir.1971). Furthermore, gag orders do not violate a party's free speech rights. *United States v. Tijerina*, 412 F.2d 661 (10th Cir.), *cert. denied*, 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452 (1969). There must simply be evidence or findings that the judicial officer finds imminent prejudice to the administration of justice. *In re Oliver, supra*. As most recently noted in *Martinez v. Winner*, a judge is ultimately responsible for controlling the atmosphere at proceedings and is immune for acts taken in furtherance of that duty. *Martinez*, 771 F.2d at 434-35.

▮ Similarly, the power and duty to disqualify counsel are exercised by a judge as a condition of the federal court's power to regulate the professional conduct of attorneys admitted to its bar. *Ceramco Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 270-71 (2d Cir.1975); *In re Gopman*, 531 F.2d 262, 266 (5th Cir.), *reh'g denied*, 542 F.2d 575 (1976). The trial court's obligation is to prevent any potential conflict of interest. *Tucker v. Shaw*, 378 F.2d 304 (2d Cir.1967).

Plaintiff also states that the defendant performed various "ministerial or administrative duties" to which he is not entitled to judicial immunity. Response at 8. This Court does not regard any of the actions listed by plaintiff on page 9 of his Response as "ministerial." The signing of protective orders, granting or refusing permission to take depositions, and awarding or denying interest on attorney's fees awards all go directly to the conduct of discovery, pretrials and the administration of a judgment. These actions could scarcely be called anything less than "judicial," for they lie at the heart of a trial court's duties. *See Martinez*, 771 F.2d at 434.

Citing the case of *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir.1980), plaintiff analogizes defendant's conduct to the exercise of "prosecutorial powers." Response at 6–7. The test enunciated in *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984), is "whether initiating accusatory processes such as criminal prosecutions or civil contempt proceedings is a function normally performed by a judicial officer." (Citing *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107.) Plaintiff complains that in his orders of July 17 and July 18, 1984, "the Magistrate called upon the defendant's law firm to conduct an investigation into the legal and personal activities of attorney Affeldt...." Response at 7. An examination of the orders, attached as exhibits to plaintiff's Response, does not show the Magistrate ordering any investigation. Rather, what appears is the Magistrate grappling with defendant's motion to disqualify Affeldt. The Magistrate states that "it appears that certain readily ascertainable facts are in dispute, and that those facts may have some pertinence to the resolution in question." July 19, 1984 Order at 1. The Magistrate asks defendant to supplement the record in support of this motion. *Id.* at 2. Such requests to supplement the record are made to assist the Court in rendering an informed decision; such requests are not in the nature of orders for independent investigations.

■ This Court will not at this time initiate a *de novo* review to determine whether the Magistrate's requests were appropriate or overbroad in the sense that the materials requested were more than necessary for rendering his decision. As stated by the Sixth Circuit in *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir.1984), "a judicial officer does not act in the clear absence of all jurisdiction if he merely acts in excess of his authority." There is no indication in this case that the defendant acted in a manner outside either his authority or jurisdiction. Ultimately, the conduct complained of here can be distinguished from those cases where judges order "independent investigations of crimes occurring outside their courtrooms." *See Martinez*, 771

F.2d at 435. Thus, the Magistrate did perform judicial acts which were within his jurisdiction; consequently, he is entitled to absolute judicial immunity as to the alleged damages for his acts.

■ Plaintiff contends that the Magistrate's acts are part of a "conspiracy" (Count II of Complaint), and are motivated by "malicious intent" (Count VI of Complaint). He states that they were "simply a continuation of the vendetta which the Magistrate had previously waged against attorney Affeldt [plaintiff] at the University of Toledo Law School." Response at 8. This Court will not consider such allegations. It is well-established that a judge is entitled to immunity even if he acted with partiality, maliciously or corruptly. *Bradley v. Fisher*, 13 Wall. (80 U.S.) 335, 348, 20 L.Ed. 646 (1871). Even if a judge has prejudged a matter before him, judicial immunity applies. *Martinez*, 771 F.2d at 435. Given plaintiff's allegations, it is surprising that he would not only consent to the defendant's supervision and jurisdiction over pre-trial matters but would move for the Magistrate's participation in the first instance. The Court does not wish to permit actions against judges and magistrates to become a post-judgment mechanism for losing parties to seek review of final orders. Allegations of bias, which can appropriately be addressed in a recusal motion, would proliferate if such charges could serve as the basis for a successful suit. Such a system would disrupt the very finality of judgments which the doctrine of judicial immunity was originally intended to secure.

## IV.

### INJUNCTIVE & DECLARATORY RELIEF

■ Plaintiff's complaint also seeks declaratory and injunctive relief against defendant. As stated earlier, "judicial immunity is not a bar to prospective relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981. To obtain

equitable relief, plaintiff must show that he has an inadequate remedy at law and a serious risk of irreparable harm. *Id.* at 541, 104 S.Ct. at 1981. Plaintiff has failed to make such a showing.[2] Indeed, all the acts of which plaintiff complains could have been appealed either directly or by extraordinary writ. The statute granting jurisdiction to magistrates provides appeal not only to the district judge but to the Court of Appeals. The statute explicitly states that there shall be no limitation on a party's right to appeal a magistrate's decision to the United States Supreme Court. *See* 28 U.S.C. §§ 636(c)(4) and (c)(5). Plaintiff could have exercised his rights of appeal in the context of *Sharp v. Owens-Corning.*[3] Further, as defendant has correctly noted at page 19 of his brief in support of the motion to dismiss, plaintiff could also have sought recusal or disqualification of the Magistrate under 28 U.S.C. §§ 144 and 455 as an alternative or in conjunction with direct appeal and extraordinary writs under the All Writs Act. 28 U.S.C. § 1651.

Finally, plaintiff has not demonstrated any threat of irreparable harm or injury. This Court believes greater harm would be caused to the administration of justice and the ability of the Magistrate to perform his duties were it to issue the broad injunctive and declaratory relief sought by plaintiff. Accordingly, plaintiff's prayer for injunctive and declaratory relief is denied.

## V.

In conclusion, defendant's motion to dismiss for failure to state a claim under Fed.R.Civ.Pro. 12(b)(6) is granted; plaintiff's complaint against defendant is barred by the doctrine of judicial immunity and is dismissed with prejudice.

IT IS SO ORDERED.

2. Plaintiff contends that he has demonstrated irreparable harm by alleging "invasion of First Amendment rights." Response at 16. This Court has already found, however, that the "gag orders" and disqualification rulings do not in themselves constitute infringements of the First Amendment.

3. There is an indication on the record that plaintiff did file an appeal to the Sixth Circuit. Plaintiff appears, however, to have moved for voluntary dismissal of that appeal, which was granted by the Sixth Circuit on May 30, 1985.