TASHIMA, District Judge:
Appellant Tom Neeley Mullis (“Mullis” or “appellant”) appeals the district court’s dismissal of his civil rights action against four bankruptcy judges (the “bankruptcy judge” or “judges”) of the United States Bankruptcy Court for the District of Nevada (the “bankruptcy court”), the bankruptcy court clerk and two deputy clerks (the “clerk” or “clerks”) and a bankruptcy court trustee (“Martz” or the “trustee”). We affirm.
I. FACTS AND PROCEDURAL BACKGROUND
This dispute arises from the treatment of a bankruptcy petition. The complaint alleges that Mullis sent his wife to the bankruptcy court with his bankruptcy petition, which contained no designation of the chapter of the Bankruptcy Code under which Mullis was filing.[1] He sent his wife there to find out from the clerks under which chapter of the Bankruptcy Code he could file that would permit him subsequently to withdraw or dismiss his petition as a matter of right.
Mullis alleges that the clerks neither provided his wife with the requested information nor advised her that they could not give legal advice, but instead “took” his petition and schedules from her, “stating that the petition and schedules would be filed under the appropriate chapter of the bankruptcy code.” The clerks collected a filing fee from his wife, then accepted and filed the petition under Chapter 7. A clerk later refused to accept and file an amended petition and schedules on the ground that the chapter designated on the petition was incorrect.
*1387 Mullis filed a motion to withdraw his petition and dismiss the bankruptcy case. The bankruptcy judge denied this motion. Mullis purported to appeal this order. Both the bankruptcy judge and the district judge to whom the appeal was taken denied Mullis’ motions for a stay of the bankruptcy court’s order and suspension of further proceedings pending appeal.[2] Mullis also petitioned this Court for writs of mandamus and prohibition directing the bankruptcy court to cease all further proceedings in the bankruptcy case for want of jurisdiction pending final disposition of the appeal to the district court. We denied the petition, finding that Mullis had not demonstrated that he was threatened with irreparable injury.[3]
The district court, first noting that the denial of a motion to dismiss is an interlocutory order and that Mullis had not sought leave to appeal, concluded that the bankruptcy court had a reasonable basis for its order.[4] Treating the notice of appeal as a motion for leave to appeal under Bankr.R. 8003(c), it denied leave to appeal and dismissed the appeal.[5]
Mullis then commenced this action. He alleges that through a variety of acts relating to the treatment of his bankruptcy case, described further below, appellees violated his rights to due process under the Fifth Amendment, to self-representation under the Sixth Amendment and to petition the government for redress of his grievances and to access to the courts under the First and Sixth Amendments. He seeks monetary damages, declaratory and injunc-tive relief.
II. ISSUES[6]
1. Are appellees immune from damages?
2. Are appellees immune from injunc-tive and declaratory relief?
III. DISCUSSION
Initially, we note that Mullis mistakenly designates his action throughout his complaint and briefs as an action under 42 U.S.C. § 1983 (“§ 1983”). The district court also treated it as a § 1983 action. Because appellees were all acting under color of federal law, not state law, the constitutional violations alleged in the complaint are more properly characterized as alleging direct constitutional tort claims under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[7] See Daly-Murphy v. Winston, 820 F.2d 1470, 1477 (9th Cir.1987).
The district court dismissed the action on the grounds that: (1) the bankruptcy court eo nomine was absolutely immune under the doctrine of sovereign immunity;[8] (2) the judges were absolutely immune under *1388 the doctrine of judicial immunity; and (3) the clerks and trustee had absolute quasi-judicial immunity. It also held that appel-lees’ judicial or quasi-judicial immunity barred appellant from seeking prospective injunctive relief.
A. Standard of Review
A dismissal under Rule 12(b)(6) is subject to de novo review. E.g., Kelson v. City of Springfield, 767 F.2d 651, 653 (9th Cir.1985). In reviewing such a dismissal, it must appear to a certainty that plaintiff would not be entitled to relief under any set of facts that could be proved. E.g., King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987). In civil rights cases where, as here, the plaintiff is acting pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. Id. However, facts subject to judicial notice may be considered on a motion to dismiss. Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir.1986).[9]
B. Immunity From Damages
(1)The Bankruptcy Judges
Judges are absolutely immune from civil liability for damages for their judicial acts. Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). See also Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (applying judicial immunity to § 1983 action). “A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the ‘clear absence of all jurisdiction.’ ” Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978) (citing Bradley, 80 U.S. (13 Wall.) at 351, 20 L.Ed. 646).
Mullis alleges that the bankruptcy judges committed the following acts:
(1) failed to allow Mullis to withdraw from bankruptcy;
(2) (after notice of Mullis’ appeal) continued to:
(a) administer the bankruptcy estate,
(b) conduct creditor meetings and debtor examinations, and
(c) enter orders;
(3) communicated ex parte with the trustee;
(4) failed to comply strictly with Local Rule 16(e) (which provides that failure to file a memorandum of points and authorities with a motion constitutes a consent to the denial of the motion);
(5) (with respect to Mullis’ motion to remove the trustee) refused to allow Mullis to present evidence, struck as scandalous one of Mullis’ filings, ordered Mullis to leave the courtroom, and failed to remove Martz as trustee;
(6) refused to increase the trustee’s bond;
(7) granted Martz’s ex parte motion requiring Mullis to pay him $1,000 before Mullis could take his deposition; and
(8) issued a temporary restraining order preventing Mullis from using the earnings from his private medical practice and ordered Mullis to produce confidential records.
Appellant does not dispute that the bankruptcy judges engaged in judicial acts. He contends that the acts were performed in the “clear absence of all jurisdiction.” Mullis advances two grounds for this argument. First, he asserts that his bankruptcy petition was jurisdictionally defective under 11 U.S.C. § 301, which provides that a voluntary bankruptcy case is commenced by filing a petition under one of the chapters of Title ll.[10] He contends that be *1389 cause his petition failed to indicate on its face on which chapter of the Bankruptcy Code he was relying, the petition did not invoke the jurisdiction of the bankruptcy court under § 301. Second, he contends that the bankruptcy judges lacked all jurisdiction over matters arising from his bankruptcy petition after he filed his notice of appeal from the order denying his motion to withdraw his petition and to dismiss the bankruptcy case. He argues that his properly filed notice of appeal divested the bankruptcy court of jurisdiction over his petition, citing In re Bialac, 15 B.R. 901, 903 (Bankr. 9th Cir.1981), aff’d, 694 F.2d 625 (9th Cir.1982).
These contentions are without merit. Appellant misconstrues the meaning of the “clear absence of all jurisdiction” exception to the doctrine of judicial immunity. The Supreme Court has illustrated the distinction between an act in the clear absence of jurisdiction and an act in excess of jurisdiction with this example:
if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.
Stump, 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7 (citing Bradley, 80 U.S. (13 Wall.) at 352, 20 L.Ed. 646). A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction. Bradley, 80 U.S. (13 Wall.) at 351-52. See also Rankin v. Howard, 633 F.2d 844, 848-49 (9th Cir.1980) (“a judge who acts in the clear and complete absence of personal jurisdiction loses his judicial immunity”), cert. denied, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981); O’Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir.1981) (holding that a judge who convicted defendant for contempt, an act within the court’s jurisdiction, but without the affidavit required by statute to confer jurisdiction over the offense charged was still entitled to immunity; his act was merely in excess of his jurisdiction).
The bankruptcy judges clearly had subject matter jurisdiction over the bankruptcy petition and proceedings under 28 U.S.C. §§ 151 and 1334. Mullis does not allege that he did not intend to file for bankruptcy; he merely states that his petition did not indicate under which chapter he was filing and that the bankruptcy court improperly retained jurisdiction after commencement of his appeal to the district court. What Mullis alleges are, at most, errors or acts in excess of jurisdiction, not acts in the clear absence of all jurisdiction.[11]
Thus, we affirm the district court’s ruling that the bankruptcy judges had absolute judicial immunity from money damages.
*1390 (2)The Clerks
Mullis contends that the clerks who initially accepted and filed his petition and who later refused to accept an amended petition are entitled to only qualified immunity or that, if they are entitled to quasi-judicial immunity, they acted in the clear absence of all jurisdiction.
Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. See Morrison v. Jones, 607 F.2d 1269, 1273 (9th Cir.1979) (§ 1983 case), cert. denied, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); Shipp v. Todd, 568 F.2d 133, 134 (9th Cir.1978) (same); Stewart v. Minnick, 409 F.2d 826 (9th Cir.1969) (same). Cf. Sharma v. Stevas, 790 F.2d 1486 (9th Cir.1986) (Clerk of United States Supreme Court had absolute quasi-judicial immunity under Federal Tort Claims Act because his acts were an integral part of the judicial process).
The complaint alleges that the court clerks committed the following acts:
(1) failed to give proper counselling and notice regarding the chapters of the Bankruptcy Code under which Mullis could file, as allegedly required by 11 U.S.C. § 342(b);
(2) accepted and filed the incomplete bankruptcy petition under Chapter 7; and
(3) later refused to accept an amended petition.
Even if all of these allegations are taken as true, they all properly are characterized as integral parts of the judicial process. The commencement of an action by filing a complaint or petition is a basic and integral part of the judicial process. See, e.g., 11 U.S.C. § 301 (voluntary bankruptcy case commenced by filing a petition); Bankr.R. 1002(a) (same); F.R.Civ.P. 3 (civil action commenced by filing a complaint). The clerk of court and deputy clerks are the officials through whom such filing is done. Consequently, the clerks qualify for quasi-judicial immunity unless these acts were done in the clear absence of all jurisdiction.
As noted above, a mistake or an act in excess of jurisdiction does not abrogate judicial immunity, even if it results in “grave procedural errors.” Stump, 435 U.S. at 359, 98 S.Ct. at 1106. Here, the complaint alleges that the clerks erred in failing to carry out their alleged duties. All of the acts complained of, however, are within the general “subject matter jurisdiction” of the bankruptcy clerks, as is evident from 11 U.S.C. §§ 301 and 342(b).
Thus, the clerks had quasi-judicial immunity and did not act in the clear absence of all jurisdiction. As a result, the district court’s ruling that the court clerks had absolute immunity from damages is affirmed.
(3)The Bankruptcy Trustee
Martz also has absolute quasi-judicial immunity from damages. Lonneker Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir.1986); Mosher v. Saalfelt, 589 F.2d 438, 442 (9th Cir.1978), cert. denied, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979). The trustee or receiver derives his immunity from the judge who appointed him. Id. Thus, the trustee also loses his immunity if he acts in the clear absence of all jurisdiction.
The complaint alleges that Martz performed the following acts:
(1) refused to recommend Mullis’ motion to withdraw and refused to enforce the requirements of 11 U.S.C. §§ 301 and 342(b);
(2) refused to acknowledge that the bankruptcy court lost jurisdiction once notice of appeal was filed;
(3) filed a motion for the appointment of a guardian ad litem and admitted that this motion was an attempt to prevent Mullis from representing himself; and
(4) communicationed ex parte with the judges.
These were all acts or omissions within the ambit of the trustee’s official duties. Mullis does not dispute this, but repeats his arguments that the acts were performed in the clear absence of all jurisdiction. These arguments were discussed and disposed of *1391 above, in relation to the bankruptcy judges’ immunity. Since the judges had immunity, so did the trustee they appointed. Consequently, the district court’s ruling as to Martz’s immunity from damages also is affirmed.
C. Immunity From Declaratory and Injunctive Relief
In addition to damages, Mullis seeks both declaratory relief under 28 U.S.C. §§ 2201 and 2202 and injunctive relief. He contends that even if appellees are entitled to judicial or quasi-judicial immunity from damages, that immunity does not apply to prospective equitable relief. Appellant seeks an order declaring that appellees violated his constitutional rights in various ways during the bankruptcy proceedings and an injunction ordering the dismissal of the bankruptcy case and prohibiting enforcement of any orders or judgments entered during the proceedings.[12] The district court, relying on Mirin v. Justices of the Supreme Court, 415 F.Supp. 1178 (D.Nev.1976), and MacKay v. Nesbett, 285 F.Supp. 498 (D.Alaska 1968), aff’d, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), held that absolute judicial and quasi-judicial immunity barred declaratory and injunctive relief.
These cases, both brought under § 1983, have been overruled. It is now established that judicial immunity does not bar declaratory or injunctive relief in actions under § 1983. Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1980-81, 80 L.Ed.2d 565 (1984); Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). However, whether the Pulliam exception applies or whether judicial immunity bars equitable relief in a Bivens action, such as the case at hand, is an issue of first impression in this Circuit.
Our research has found only two post-Pulliam cases in which the defendant asserted judicial immunity against equitable relief in a Bivens action.[13] In Affeldt v. Carr, 628 F.Supp. 1097 (N.D.Ohio 1985), the court dismissed an action for damages and declaratory and injunctive relief against a United States magistrate based on asserted violations of plaintiff’s constitutional rights. The court there followed Pulliam, holding that the magistrate had absolute judicial immunity from damages, *1392 but that judicial immunity did not apply to claims for declaratory and injunctive relief. Id. at 1102. Nonetheless, the court noted that the usual requirements for an award of equitable relief applied in civil rights cases so that “the plaintiff must show that he has an inadequate remedy at law and a serious risk of irreparable harm.” Id. at 1103 (citing Pulliam, 466 U.S. at 537, 104 S.Ct. at 1978). Affeldt held that plaintiff had an adequate remedy at law because all of the magistrate’s acts could have been reviewed on appeal to the district court, the court of appeals and the Supreme Court or by extraordinary writ. As an alternative, plaintiff could have sought disqualification of the magistrate. Id. The court also found that plaintiff had not shown any threat of irreparable harm or injury and that greater injury would “be caused to the administration of justice and the ability of the Magistrate to perform his duties” if it were to grant the declaratory and injunctive relief sought. Id. Thus, the court held that equitable relief was unavailable in the circumstances of that case.[14]
Affeldt illustrates the anomaly that arises when the Pulliam exception to judicial immunity is applied against a federal judicial officer. Where a federal official meets the prerequisites for judicial or quasi-judicial immunity from damages, there will invariably be an adequate remedy through either ordinary appeals or by extraordinary writ. In the case at bench, appellant had adequate remedies through: (1) appeal from the bankruptcy court to the bankruptcy appellate panel or the district court and then to this Court under 28 U.S.C. § 158(a), (b)(1) and (d);[15] (2) this Court’s powers under the All Writs Act, 28 U.S.C. § 1651;[16] (3) a motion to withdraw the reference to the bankruptcy court, 28 U.S.C. § 157(d); or (4) a motion to disqualify the bankruptcy judge, Bankr.R. 5004(a), or the district judge, 28 U.S.C. §§ 144 & 455. Indeed, a quick perusal of the voluminous entries on the docket of the underlying bankruptcy case[17] reveals that Mullis made more than ample use of the available procedures for appeal and mandamus.
Given these remedies, a bankruptcy litigant cannot show an inadequate remedy “at law” and a serious risk of irreparable harm, prerequisites to injunctive relief under Pulliam, 466 U.S. at 537, 104 S.Ct. at 1978.[18] However, the threat of damage to the orderly administration of justice in the federal court system is great. By styling his or her complaint as a Bivens injunctive action, a federal court litigant could circumvent the limitations on direct appeal, including interlocutory appeal, and for extraordinary writs. To allow a district court to grant injunctive relief against a bankruptcy court or the district court in the underlying bankruptcy case would be to permit, in effect, a “horizontal appeal” from one dis *1393 trict court to another or even a “reverse review” of a ruling of the court of appeals by a district court.[19] Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper.[20] See Brown v. Baden, 815 F.2d 575, 576-77 (9th Cir.1987); In re Braughton, 520 F.2d 765, 766 (9th Cir.1975); Tanner Motor Livery Ltd. v. Avis, Inc., 316 F.2d 804, 810 (9th Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963).
In addition, were the district court to grant the injunctive relief appellant here requests, it would in essence be issuing a writ of mandamus to the bankruptcy court and the district court in the underlying proceeding. See Lewis v. Green, 629 F.Supp. 546, 553 (D.D.C.1986). A district court lacks authority to issue a writ of mandamus to another district court. Id.
These problems suggest that the Pulliam exception to judicial immunity should not apply in a Bivens action pending in federal court. Pulliam was a § 1983 action against a state magistrate who imposed bail for nonjailable misdemeanors and committed plaintiffs to jail when they did not post bond. As the dissent pointed out, and the majority acknowledged, the plaintiffs may have had an adequate remedy at law through state court appellate review of the orders which required excessive bail and through state habeas corpus relief from unlawful detention. See 466 U.S. at 553 n. 13, 104 S.Ct. at 1977 n. 13 (Powell, J., dissenting); id. at 542 n. 22,104 S.Ct. at 1981 n. 22. However, the Pulliam majority stressed that Congress enacted § 1983 and its predecessor, § 2 of the Civil Rights Act of 1866, 14 Stat. 27:
to provide an independent avenue for protection of federal constitutional rights. The remedy was considered necessary because “state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights.
Id. at 540, 104 S.Ct. at 1980 (quoting Mitchum v. Foster, 407 U.S. 225, 240, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705 (1972)).
In Pulliam, the Court further noted that many years had passed since those statutes were enacted and that today it would be improper to assume that a state court would not act to prevent, or that a state judge would engage directly in, a deprivation of federal constitutional rights. Id. at 541, 104 S.Ct. at 1980. Nonetheless, the Court concluded “that Congress intended § 1983 to be an independent protection for federal rights” and that there was “nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review.” Id.[21]
*1394 The reasoning of Pulliam simply is inapplicable to a Bivens action. There is no need to carve out an exception to judicial immunity to permit declaratory and injunc-tive relief against federal judicial officers. Should a federal judge or other federal official performing a judicial or quasi-judicial act violate a litigant’s constitutional rights in a proceeding pending in federal court, Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code.[22] Through these procedures, a litigant, such as Mullis, receives full federal court review of allegations of deprivations of federal constitutional rights by federal judicial officers acting under color of federal law. To allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and a multiplicity of litigation.
We hold that when a person who is alleged to have caused a deprivation of constitutional rights while acting under color of federal law can successfully assert judicial or quasi-judicial immunity from damages, that immunity also will bar declaratory and injunctive relief. The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief. We thus affirm the district court’s ruling, albeit for different reasons.
IV. CONCLUSION
Because it is plain from the face of the complaint and judicially noticeable facts that all appellees were engaged in judicial or quasi-judicial acts and were not acting in the clear absence of all jurisdiction, they are absolutely immune from damages and from declaratory and injunctive relief.
The judgment is AFFIRMED.

. The Bankruptcy Code appears to contemplate that a voluntary petition will indicate the chapter under which it is being filed. 11 U.S.C. § 301; see footnote 10, infra.

. Mullis v. Nevada Nat’l Bank (In re Mullis), No. CV R-85-394-ECR (D.Nev. Aug. 8, 1985).

. Mullis v. United States District Court, No. 85-7407 (9th Cir. Nov. 12, 1985) (Order).

. Citing In re Sentinel Bonding Agency, Inc., 24 B.R. 551, 554 (W.D.Okla.1981), as the standard of review.

. Mullis v. Nevada Nat’l Bank (In re Mullis), No. CV R-85-394-ECR (D.Nev. Feb. 28, 1986).

. The district court’s decision was made on motions to dismiss under F.R.Civ.P. 12(b)(6). Appellant’s contention that there are issues of fact which precluded dismissal under Rule 12(b)(6) is meritless. The issue of entitlement to absolute judicial immunity for acts alleged in the complaint properly may be decided on a motion to dismiss. See Imbler v. Pachtman, 424 U.S. 409, 416, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Although Martz captioned his motion as one for summary judgment, it was equivalent to a motion to dismiss. The only declaration submitted in support of the motion was Martz's own, in which he stated that his acts were done as a duly appointed bankruptcy trustee, a fact alleged in the complaint. Further, even if appellant’s request for further discovery were deemed a sufficient request under F.R.Civ.P. 56(f), it was not an abuse of discretion to deny further discovery because, as stated above, the matter was determinable on the pleadings and further discovery would have been futile. Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir.1987); Hall v. Hawaii, 791 F.2d 759, 761 (9th Cir.1986); Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 656 (9th Cir.1984).

. Thus, the district court had jurisdiction under 28 U.S.C. § 1331; we have jurisdiction under 28 U.S.C. § 1291.

. No appeal is taken from this ruling.

. Mullis objects to appellees’ supplemental excerpt of record ("SER"), which consists entirely of pleadings, orders and other papers on file in the underlying bankruptcy case. While the SER may not strictly comply with Ninth Circuit Rule 13(a)(1)(A) because it does not consist of "documents from the clerk’s record” in this action, it is subject to judicial notice under F.R.Evid. 201(f). Id. Thus, appellant's objection is not well taken.

. 11 U.S.C. § 301 provides:
A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor *1389 under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

. Indeed, the bankruptcy judges do not even appear to have acted in error or in excess of jurisdiction in proceeding on an "undesignated” petition. The Official Form, to which Mullis’ petition did not conform, presumes that the petitioner is filing under Chapter 7, unless otherwise indicated. See Official Form 1 — Voluntary Petition (appended to Bankr.R.). Mullis' form is ambiguous, but this was due to his error in using a form with a typographical error, not the fault of the bankruptcy court clerks, judges or trustee. See Bankr.R. 9009 (requiring that only the Official Forms be used with alterations as may be appropriate).
Although Mullis correctly states the rule regarding the effect of a properly filed notice of appeal on the bankruptcy court’s jurisdiction, his notice was not properly filed. The denial of Mullis’ motion to dismiss was an interlocutory order. See In re 405 N. Bedford Dr. Corp., 778 F.2d 1374, 1377 (9th Cir.1985). As a result, as the district court held, Mullis was required to proceed by a motion for leave to appeal. See text accompanying footnotes 4 & 5, supra; Bankr.R. 8003. Mullis did not file for such leave. Thus, the bankruptcy court was not divested of jurisdiction by the improperly filed notice of appeal. We need not and do not decide whether a judge who continues to act in a case after the timely filing of a notice of appeal from a final judgment is acting in the clear absence of all jurisdiction or merely in excess of his or her jurisdiction.

. Appellant also seeks an injunction enjoining appellees in the future from accepting and filing "undesignated” bankruptcy petitions, from refusing to provide potential debtors with written notice and counselling concerning the chapters of the Bankruptcy Code under which they may file and from refusing to comply with Local Rule 16(e). Mullis has not demonstrated and probably cannot show that these alleged unconstitutional practices are ever likely to occur again, a prerequisite to standing to seek such injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). However, we need not address this issue because Mullis seeks injunctive relief as to his own pending bankruptcy case. Even assuming that Mullis lacks standing to seek injunctive relief with respect to future bankruptcy proceedings, he has standing to seek such relief with respect to his own pending case. We, therefore, must consider the merits of his claim for such relief.

. In Lewis v. Green, 629 F.Supp. 546, 552-53 (D.D.C.1986), the court held that a United States district judge for the District of Columbia was immune from both damages and equitable relief for her role in approving a settlement decree in a class action to which plaintiff was a party. Plaintiff sued under § 1983, which redresses violations of civil rights under color of District of Columbia law, as well as state law. Id. at 552. The Lewis court noted that plaintiffs allegations also conceivably stated a Bivens claim. Id. However, the court did not even mention Pulliam in concluding that the district court judge was immune from all relief. See id.
We have held that a Yakima Indian tribal court judge is not immune from injunctive relief. United States v. Yakima Tribal Court, 806 F.2d 853, 861 (9th Cir.1986). That case, however, was neither a § 1983 nor a Bivens action. It was an action brought by the United States to void a tribal court injunction restraining federal officials from relocating an irrigation canal on tribal land. We held that the district court properly enjoined the tribal court judge from enforcing the restraining orders he had entered because his status as a tribal judicial officer did not entitle him to immunity from injunctive relief under Pulliam. Id.
One of our post-Pulliam decisions involved the application of judicial immunity in favor of a bankruptcy judge in a Bivens action. Lonneker Farms, 804 F.2d 1096 (9th Cir.1986). However, the opinion does not disclose whether that was an action for damages or injunctive relief or both. In any event, the Pulliam exception is not discussed.

. In the second post•Pulliam case, the Second Circuit, after holding that a federal probation officer was entitled to absolute quasi-judicial immunity from damages, assumed without any discussion or analysis that the Pulliam exception applied in a Bivens action. It held that no claim for injunctive relief at all had been stated. Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir.1987).

. Indeed, previous decisions of this Court have recognized the need for a more flexible view of "final” orders in bankruptcy proceedings so that those "that ‘may determine and seriously affect substantive rights’ and 'cause irreparable harm to the losing party if he had to wait to the end of the bankruptcy case’ are immediately appeal-able.” In re Teleport Oil Co., 759 F.2d 1376, 1377 (9th Cir.1985) (quoting In re White, 727 F.2d 884, 885 (9th Cir.1984)).

. An essential function of the writ of mandamus is to prevent a judge from acting in excess of his or her jurisdiction. E.g., Pan Am. World Airways, Inc. v. United States District Court, 523 F.2d 1073, 1076 (9th Cir.1975). This is precisely appellant’s complaint. Moreover, mandamus is available to review interlocutory orders in bankruptcy proceedings "in those extraordinary cases where a bankruptcy appellant in the district court is threatened with irreparable harm and there are no other means, including the eventual appeal, to protect himself from this harm.” In re Teleport Oil Co., 759 F.2d at 1378.

. Of which we may take judicial notice. See footnote 9, supra.

. As noted earlier, we denied Mullis’ petition for a writ of mandamus to stay the bankruptcy case pending his appeal in the district court of his motion to dismiss, because he had not shown he was threatened with irreparable harm. See text accompanying footnote 3, supra.

. Needless to say, a district court has no such authority to "review” any ruling of a court of appeals. E.g., Insurance Group Comm. v. Denver & R.G.W.R.R., 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947) (“When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court. Thus, a cause proceeds to final determination.").

. Moreover, once the reviewing court issued a decision, the losing party conceivably could then file a successive suit for injunctive relief alleging violations of its constitutional rights and so on ad infinitum. Cf. Baier v. Parker, 523 F.Supp. 288, 291 (M.D.La.1981) (dismissing an action for declaratory relief that essentially sought review of decisions rendered by another district court and a court of appeals).

. The Court traced the history of judicial immunity in the English common law and noted that the King’s Bench exercised considerable collateral control over inferior and rival courts through the use of prerogative writs, including mandamus and prohibition, even though the judges of those courts were immune from damages. Pulliam, 466 U.S. 529-36, 104 S.Ct.at 1974-78. The Court concluded that there was thus no inconsistency between a principle of immunity from damages and the availability of prospective injunctive relief. Id. at 536, 104 S.Ct. at 1978. The Court was constrained, however, by the fact that the defendant there was a state magistrate to whom no writ of mandamus or prohibition could be issued. See, e.g., In re Blake, 175 U.S. 114, 118, 20 S.Ct. 42, 43, 44 L.Ed. 94 (1899). The Court in Pulliam stated:
If the Court were to employ principles of judicial immunity to enhance further the limitations already imposed by principles of comity and federalism on the availability of injunc-tive relief against a state judge, it would foreclose relief in situations where, in the opinion of a federal judge, that relief is constitutionally required and necessary to prevent irreparable harm. Absent some basis for determining *1394 that such a result is compelled, either by the principles of judicial immunity, derived from the common law and not explicitly abrogated by Congress, or by Congress's own intent to limit the relief available under § 1983, we are unwilling to impose those limits ourselves on the remedy Congress provided.
466 U.S. at 539-40, 104 S.Ct. at 1979-80. Clearly, because a federal court is subject to appeals and extraordinary writs under the federal system that a state court is not, it is unnecessary to create an exception to judicial immunity to ensure that violations of federal constitutional rights can be remedied by "a federal judge.” Neither is there any impingement on a "remedy Congress provided.” Unlike § 1983, the Bivens constitutional tort claim is judge-made and was implied by the Court directly from the Constitution. Bivens, 403 U.S. at 397, 91 S.Ct. at 2005. Moreover, the Court there was concerned only with a damage remedy. See id. at 395, 91 S.Ct. at 2004 ("Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.”) (citations omitted).

. See, e.g., Armster v. United States District Court, 792 F.2d 1423 (9th Cir.), motion to vacate denied, 806 F.2d 1347 (9th Cir.1986) (mandamus to halt nationwide suspension of jury trials in civil cases in violation of Seventh Amendment).
The concluding sentence of the portion of Pulliam relied on by the dissent, 466 U.S. at 536-38, 104 S.Ct. at 1977-79, states, "Occasionally, however, there are ‘really extraordinary causes’ and, in such cases, there has been no suggestion that judicial immunity prevents the supervising court from issuing the writ.” Id. at 538, 104 S.Ct. at 1979 (footnote omitted). The cases cited in support of this proposition are federal cases in which courts of appeals issued writs of mandamus to district courts. Id. at 538 n. 19, 104 S.Ct. at 1979 n. 19. Thus, this portion of Pulliam supports the position taken here.