Elroy X. LEWIS

v.

The Honorable June L. GREEN, et al.

Elroy X. LEWIS

v.

The Honorable Aubrey E. ROBINSON, Jr., et al.

Minister Elijah KARRIEM, William X. Sullivan, and Elroy X. Lewis

v.

The Honorable Aubrey E. ROBINSON, Jr., et al.

Minister Elijah KARRIEM

v.

Metcalfe C. KING, et al.

William X. SULLIVAN, et al.

v.

Metcalfe C. KING, et al.

Civ. A. Nos. 85–2438, 85–2449, 85–2484, 85–2537 and 85–2662.

United States District Court, District of Columbia.

Feb. 28, 1986.

Elroy X. Lewis, pro se.

Scott Kragie, Asst. U.S. Atty. for the District of Columbia, for U.S. Dist. Judge June L. Green.

Craig Ellis, Asst. Corporate Counsel, Washington, D.C., for Mayor Marion Barry, James Palmer, William Plaut, and the Office of the Corp. Counsel.

Peter Nickles, and Matthew Jacobs, and Covington & Burling, Washington, D.C., for Peter Nickles and Covington & Burling.

NORTHROP, Senior District Judge (Sitting by special designation).

Elroy X. Lewis, an inmate at the Maximum Security Facility of the Lorton Correctional Complex, instituted this suit, Civil Action No. 85–2438, to contest the settlement and consent decree entered into by the parties and approved by the Court in *John Doe v. District of Columbia,* Civil Action No. 79–1726 (D.D.C.1979). That suit was a class action brought by the prisoners in the Maximum Security Facility at Lorton, including Lewis, against the District of Columbia municipal and reformatory officials who administered Lorton.

In this current action, Lewis has sued United States District Judge June L. Green, the judge who presided over *Doe* and approved the settlement; Covington and Burling, the law firm which represented the prisoner class in that litigation (hereinafter "Covington"); Peter J. Nickles, an attorney who handled the case at Covington; the Office of the Corporation Counsel of Washington, D.C., the arm of the District government which entered into the decree with the class representatives in *Doe;* Marion S. Barry, the Washington, D.C. Mayor; James Palmer, the Director of the Department of Corrections of the District; and William M. Plaut, the Acting Administrator of the Maximum Security Facility. Mr. Lewis alleges in his complaint that the defendants conspired to deprive him and did deprive him of his constitutional and civil rights by concluding that litigation by the settlement and consent decree. Essentially, he asserts the infringements of rights to a jury trial and damages in the *Doe* litigation, in violation of the Seventh and Fifth Amendments.[1] He sues under 42 U.S.C. §§ 1983 and 1985, seeking injunctive relief from defendant

---

1. The complaint also alleges violations of Article VI, clauses 2 & 3, of the Constitution; the 1st, 8th, 9th, and 14th Amendments; 42 U.S.C. § 1981; 28 U.S.C. § 453; and 18 U.S.C. §§ 241, 242.

Judge Green and damages from the other defendants.

Presently before the Court are three motions to dismiss—the first from defendants Palmer, Plaut, Barry, and Corporation Counsel; the second from defendants Covington and Nickles; and the third from Judge Green. For reasons of efficiency and clarity, all three motions will be considered in this single memorandum. Before delving into the legal analysis, however, a brief encapsulation of the background of this suit is in order.

## I. BACKGROUND

Inmates in the Lorton Maximum Security Facility brought a class action against the District of Columbia and several of its officials and employees, challenging the conditions of the confinement. *John Doe v. District of Columbia*, Civil Action No. 79–1726 (D.D.C.1979). The complaint charged the defendants with the infliction of cruel and inhuman treatment and the negligent failure to provide adequate protection against inmate assault. Judge June L. Green presided over the trial, in which the jury returned a verdict for the plaintiffs. The jury found that the defendants had violated the Eighth Amendment, their common law duty of care, and their statutory duty of care. The plaintiffs were awarded injunctive relief and monetary damages. The defendants appealed.

On appeal, the United States Court of Appeals for the District of Columbia reversed the judgment of the district court and remanded the case for a new trial. The court of appeals cited four grounds for reversal: 1) the district court's issuance of a protective order sharply curtailing the ability of the defendants' counsel to discuss with their clients information obtained during discovery; 2) the trial court's failure to instruct the jury that the defendants could not be held liable on a theory of *responde-at superior;* 3) its use of a misleading instruction concerning the danger posed to weaker inmates by their proximity to a group of violence-prone prisoners; and 4)

its authorization of damages for the intrinsic value of the prisoners' eighth amendment rights. *Doe v. District of Columbia*, 697 F.2d 1115, 1117–18 (D.C.Cir.1983).

Following the remand, the parties agreed to a settlement and consent decree, which was subsequently approved by Judge Green in a Memorandum and Order dated March 23, 1984. On October 15, 1984, a group of class members, including Mr. Lewis, filed a motion pursuant to FED.R. CIV.P. 60(b)(1)(3) to vacate and set aside the settlement and consent decree. The court denied the motion on December 12, 1984. No appeal was taken from this order. Seven months later, the plaintiff filed the present action.

## II. MOTIONS TO DISMISS

The three motions to dismiss pending before the Court encompass all of the defendants. Upon consideration of the record, the Court determines that a hearing is not necessary for disposition of the motions. Local Rule 1–9(g).

Motions to dismiss *pro se* civil rights actions are not favored by the courts. The Supreme Court has held that a prisoner's *pro se* complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the prisoner can prove no set facts in support of his claim which would entitle him to relief. *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Nevertheless, dismissal may be appropriate for those claims simply without arguable merit both in law and fact. *See Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976). All but one of the claims contained in the complaint are wholly without merit, and, for the reasons set forth below, must be dismissed.

### A. 42 U.S.C. Section 1985(2)

■ The plaintiff's first claim is founded upon 42 U.S.C. § 1985(2), the Federal Conspiracy to Obstruct Justice Act. Specifically, the plaintiff relies on clause two of that section:[2]

**2.** Section 1985(2) reads in its entirety as follows: Obstructing justice;

Intimidating party, witness, or juror

... if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws....

Even after affording the plaintiff every benefit of the doubt appropriate with the consideration of *pro se* pleadings, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this Court finds that the complaint fails to state a cause of action under clause two of section 1985(2). The clause addresses obstructions of justice only within the state court system. Moreover, it reaches only those conspiracies that deny the equal protection of the laws.

Both the language and legislative history of clause two indicate that the provision does not remedy the obstruction of justice in federal courts. The Supreme Court recently characterized this clause as applying "to conspiracies to obstruct the course of justice in state courts...." *Kush v. Rutledge*, 460 U.S. at 725, 103 S.Ct. at 1487. *See also* Justice White's dissent from the denial of a writ of certiorari in *Kimble v. McDuffy*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) ("The second part of section 1985(2) creates a similar cause of action for interference with state proceedings.").

The statutory language of clause two specifies that the statute relates to "the due course of justice in any State or Territory ..." Clause one, in contrast, is directed specifically at conspiracies involving the

federal courts alone. Furthermore, the legislative history of clause two evidences that changes in its text, specifically the addition of the phrase "the denial of equal protection of the laws," were prompted by concerns that it unconstitutionally interfered with the state courts. The insertion of the equal protection language by the authors of the Act invoked Congressional power under Section 5 of the Fourteenth Amendment, the power to enforce the amendment against the states. Nothing in the legislative history suggests that Congress intended that clause two apply to obstruction of justice in the federal courts. For a thorough treatment of the legislative history of the provision, see *McCord*, 636 F.2d at 615–17; and *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066–67 (5th Cir. 1980), *aff'd in part and rev'd in part*, 648 F.2d 340 (5th Cir.1981) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

■ The obstructions of justice alleged by Mr. Lewis in his complaint all concern proceedings in federal court, specifically the negotiation and approval of the settlement decree in *Doe v. District of Columbia*. As such, the alleged conspiracy does not fall within the second clause of section 1985(2).

■ Another essential element under clause two is the intention of the conspirators to deny the plaintiff the equal protection of the laws. *McCord v. Bailey*, 636 F.2d at 614; *Kimble*, 623 F.2d at 1065; *Brawer v. Horowitz*, 535 F.2d 830, 839 (3d

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding,

hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

The Supreme Court in *Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983) divided the section into two clauses for purposes of analysis, as had this Circuit in *McCord v. Bailey*, 636 F.2d 606 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

Cir.1976). *Cf. Kush v. Rutledge*, 103 S.Ct. 1483, 1487–88. As such, a class-based invidious discriminatory intent is necessary for a cause of action. *Kimble*, 623 F.2d at 1065. *Cf. Kush v. Rutledge*, 103 S.Ct. at 1487. Not all classes fall within the protection of this provision. To determine which types of classes are protected, it is appropriate to turn to the line of cases which has grown out of the Supreme Court's interpretation of 42 U.S.C. § 1985(3) in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *Kimble*, 623 F.2d at 1065. *Cf. Kush v. Rutledge*, 103 S.Ct. at 1487.

In *Griffin*, the Supreme Court held that in the context of section 1985(3), the deprivation of equal protection of the laws must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102. Since *Griffin*, the courts have striven to define the class-based discriminatory animus necessary for recovery under section 1985(3). The Supreme Court has since held that the provision does not reach "conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). This Circuit recently included within the scope of this section conspiracies motivated by animus against those who politically support civil rights for Blacks. *Hobson v. Wilson*, 737 F.2d 1, 21 (D.C.Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). What remains unresolved is the status of those classes organized according to principles other than race or economics.

Several circuits have ruled that politics and religion define a protected class under section 1985(3). *See, e.g., Keating v. Carey*, 706 F.2d 377, 368–88 (2d Cir.1983) (political affiliation); *Ward v. Connor*, 657 F.2d

45, 47–48 (4th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982) (members of the Unification Church); *Glasson v. City of Louisville*, 518 F.2d 899, 911–12 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975) (critics of the President); *Founding Church of Scientology v. Director*, 459 F.Supp. 748, 754 (D.D.C.1978) (members and officials of that church). *But see Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (non-racial political conspiracies not actionable). Classes based on non-political, non-religious criteria, on the other hand, have not been afforded protection under the statute. *See, e.g., Wilhelm v. Continental Tile Co.*, 720 F.2d 1173, 1176 (10th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984) (handicapped persons not a protected class); *DeSantis v. Pacific Telephone and Telegraph Co.*, 608 F.2d 327, 333 (9th Cir. 1979) (homosexuals not a protected class).

▉ The class allegedly conspired against by the defendants in this case is one group of prisoners within the class of prisoner-plaintiffs in the suit *Doe v. District of Columbia*. Specifically, it is the class of plaintiffs in *Doe* that objected to the settlement decree. The allegedly victimized class is defined not by race, nor by political or religious beliefs, but instead by dissatisfaction with the litigation strategy in that action.[3] The class exists only for this immediate dispute. Lacking wholly in any racial, political or religious content, this class of disgruntled litigants does not constitute a protected class under section 1985(2).[4]

▉ Similarly, a cause of action cannot be founded upon clause one of section 1985(2), the provision pertaining to the obstruction of justice in federal courts.[5] That clause applies only to improprieties involving witnesses and jurors. Nothing in the clause even remotely relates to a suspect settlement of a class action.

---

3. Less than seventy-five of the greater than four hundred class members objected to the proposed settlement (fewer than 19%).

4. The class is, for these same reasons, an unprotected class under § 1985(3). *See infra* Part IIB.

5. *See supra* note 2 for the complete text of § 1985(2).

*B. Section 1985(3)*

 To establish a violation of section 1985(3) as construed in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, the plaintiff must allege, and subsequently prove, four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property, or deprived of any right, or privilege of a citizen of the United States. *Hobson v. Wilson,* 737 F.2d 1 (D.D.C.1984). Lacking the requisite class-based animus of the second element, the complaint fails to constitute a claim upon which relief can be granted under this part of section 1985. Section 1985(3) remedies only those conspiracies which deny equal protection under the law as discussed in Part IIA of this opinion.[6]

*C. 42 U.S.C. Section 1981*

 The plaintiff's claim under section 1981[7] must also fail in the absence of racially motivated discrimination. This section, taken from the Civil Rights Act of 1866, is directed solely at racial discrimination. *See National Association of Government Employees v. Rumsfeld,* 413 F.Supp. 1224 (D.D.C.), *aff'd without opinion,* 556 F.2d 76 (D.C.Cir.1977) (no remedy for discrimination based on national origin); *Woods v. State,* 469 F.Supp. 1127 (S.D.N.Y.), *aff'd. without opinion,* 614 F.2d 1293 (2d Cir.1979) (no remedy for discrimination based on nepotism or political influence).

*D. Section 1983 and the Bivens Cause of Action*

 42 U.S.C. § 1983 redresses deprivations of rights accomplished under color of District of Columbia, as well as state law. 42 U.S.C. § 1983 as amended 1979. The plaintiff alleges a cause of action based on this statute. Additionally, the plaintiff's averments conceivably state an implied cause of action under the general federal question jurisdiction, 28 U.S.C. § 1331(a) and the Seventh, Fifth and First Amendments to the Constitution. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 864 (1979) (Fifth Amendment due process); *Dellums v. Powell,* 566 F.2d 167, 195–96 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 S.Ct. 1161 (1978) (First Amendment). *Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment). The Court will consider this "Bivens" claim, even though the claim is not specifically enumerated in the complaint. Because the plaintiff appears *pro se,* the Court interprets his complaint in a liberal manner. *See Bonner v. Circuit Court of City of St. Louis,* 526 F.2d 1331 (8th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976), *reh'g denied,* 425 U.S. 926, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976).

1. Turning first to the plaintiff's claim against Judge Green, the Court holds the Judge absolutely immune from liability for her role in approving the settlement decree in *Doe v. District of Columbia.* It is well

---

6. Even if the plaintiff's claim had fallen within the purview of §§ 1985(2) or (3), it would have failed to survive this motion to dismiss. "With near unanimity, the courts have rejected complaints containing only conclusory allegations of conspiracy under these sections." *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (§ 1985(3)); *See, e.g., Robinson v. McCorkle,* 462 F.2d 111 (3d Cir.) *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972) (§ 1985(3)); *De Wit v. KLM Royal Dutch Airlines,* 570 F.Supp. 613 (S.D.N.Y.1983) (§ 1985(2)); *Bodenmiller v. Stanchfield,* 557 F.Supp. 857 (E.D.N.Y.1983) (§ 1985(2)). The

allegations of conspiracy in Lewis' complaint are wholly unsupported by any specific facts.

7. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

established that judges are immune from damages for actions undertaken within their jurisdiction. *Bradley v. Fisher,* 13 Wall. 335 (1872) (federal judge immune from civil liability); *Foster v. MacBride,* 521 F.2d 1304 (9th Cir.1975) (federal judge under Federal Tort Claims Act). *Cf. Stump v. Sparkman,* 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978) (state judge under section 1983); *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967) (state judge under section 1983).[8]

■ The policies underlying judicial immunity from damages dictate that immunity be conferred in suits, such as this, in which a party seeks an injunction compelling a judge to alter an earlier decision. Chief Justice Warren delineated those policies in *Pierson,* 386 U.S. 547, 87 S.Ct. 1213:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.

*Id.* at 554, 87 S.Ct. at 1218.

■ Challenges to rulings made during the course of judicial proceedings should be made by appeal in those cases.[9]

The plaintiff did not appeal the district court's approval of the final consent decree or the court's denial of the motion to vacate that decree. Instead, Lewis has brought this separate action more than one year after the entry of Judge Green's decree and seven months after she denied the motion to vacate that decree.

■ In essence, the plaintiff seeks a writ of mandamus to require Judge Green to vacate her earlier orders. This Court, however, lacks authority to issue such orders, if such an order were appropriate. A writ of mandamus may be issued only by a superior court, the court of appeals in this case. 28 U.S.C. § 1651. *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed.2d 1185 (1943); *In re United States,* 598 F.2d 233, 236 (D.C.Cir. 1979).

2. The complaint charges that defendants Covington and Nickles conspired with Judge Green and the District of Columbia officials to violate, and did violate plaintiff Lewis' constitutional rights through the *Doe* settlement decree.[10]

■ These allegations, though unsupported by any facts, are nonetheless sufficient to weather this motion to dismiss. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173; *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594. These same bare allegations may not, however, suffice to survive a well-documented motion for summary judgment. *See, e.g., Smith v. Saxbe,* 562 F.2d 729, 733 (D.C.Cir.1977) (grant of summary judgment for defendants affirmed; prisoner's claim that federal officials conspired to create the false impression that he was escaping and therefore lacked probable cause to arrest him, was contradicted by uncontroverted affidavits from seven FBI agents). *See generally First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

■ Though a court appointed attorney performing a lawyer's traditional functions does not ordinarily act under color of state law, an attorney who allegedly conspires with federal officials in their official capacity is considered to engage in state

---

8. This immunity applies to all of the plaintiff's claims against Judge Green contained in the complaint.

9. "[W]hen the 'act' complained of is the issuance of an allegedly improper or incorrect judicial order, the essence of that challenge is an appeal from that order...." *Doe v. Richey,* Civil No. 79-3274 (D.D.C. June 12, 1980), Mem. op. at 2 (J. Mikva, sitting as district judge).

10. The allegations of conspiracy distinguish this complaint from the previous attacks on the settlement decree made during the course of the *Doe* litigation. It is, therefore, inaccurate to characterize the complaint as merely a reiteration of arguments previously considered and rejected by Judge Green, as defendants Covington and Nickles assert in their motion to dismiss.

action.[11] *Compare Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (court appointed counsel in a state criminal proceeding performing traditional lawyerly functions does not act under color of state law for purposes of section 1983) *with Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (private persons who allegedly conspired with a state judge in violation of section 1983 did act under color of state law); *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (public defenders charged with conspiring with state officials acted under color of state law).[12]

3. As for the District of Columbia defendants—Mayor Marion Barry; the Corporation Counsel; James Palmer; and William Plaut—the complaint again sets forth allegations which barely suffice to state a cause of action under the generous standard afforded *pro se* complaints on a motion to dismiss. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173; *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594.[13]

*E. 18 U.S.C. §§ 241 and 242*

The plaintiff has, in addition, invoked two criminal statutes in his complaint, 18 U.S.C. §§ 241 and 242. These statutes impose criminal sanctions for conspiracy against the rights of citizens and for deprivation of rights under color of law. Sections 241 and 242 do not, however, give rise to a civil action for damages or authorize an individual to institute criminal proceedings. *Fiorino v. Turner,* 476 F.Supp. 962 (D.Mass.1979) (sections 241 and 242); *Perrotta v. Irizarry,* 430 F.Supp. 1274 (S.D.N.Y.1977) (section 242); *Brown v. Duggan,* 329 F.Supp. 207 (W.D.Pa.1971) (sections 241 and 242).[14]

Accordingly, the defendants' motions to dismiss are granted in part and denied in part. A separate Order will be entered confirming the rulings herein.

---

11. The concept of state action applies to the federal government as well, *Reuber v. United States,* 750 F.2d 1039 (D.C.Cir.1984), and, through 1979 amendment of § 1983, to the District of Columbia government.

12. Though the existence of state action may not, under certain circumstances, subject a private defendant to *Bivens* liability, the Court declines to consider this issue at this juncture. The record is too sparse to apply the tests of *Reuber v. U.S.,* 750 F.2d 1039. The issue may, however, be resolved on a motion for summary judgment.

13. On motion for summary judgment, should such a motion be made, the defendants would, of course, be entitled to invoke the defense of qualified immunity. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Dellums v. Powell,* 511 F.2d 167.

The Court will also entertain briefs addressing the question of whether *Bivens* liability extends to violations of the Seventh Amendment.

14. Plaintiff's complaint also alleges violations of Article VI, clauses 2 and 3, and the Eighth and Ninth Amendments to the Constitution, as well as 28 U.S.C. § 453. None of these allegations state claims upon which relief can be granted. Neither Article VI, clause 3, which mandates that federal judges swear an oath of allegiance to the Constitution, nor 28 U.S.C. § 453, which sets forth that oath, creates a substantive cause of action against federal judges for violating that oath by acting contrary to the Constitution. The plaintiff's other allegations are patently frivolous and inapplicable to the pleaded facts.