## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
| --- | --- | --- |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Magistrate No. 10-739-11** |
| DANIEL CHOI, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**FILED**

OCT 1 1 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### MEMORANDUM OPINION

Before the Court is the government's Petition for Writ of Mandamus [64]. The government seeks a writ of mandamus to prevent Magistrate Judge John Facciola from considering selective or vindictive prosecution as either a defense to the merits of the prosecution of respondent Daniel Choi, or as the basis for a dismissal of the prosecution. Upon consideration of the Petition, the respondent's Response thereto [70], the government's Reply [82], and the oral argument of counsel, this Court will GRANT the Petition and issue a writ of mandamus directing Magistrate Judge Facciola not to consider any claims of selective or vindictive prosecution as a substantive defense on the merits of the government's underlying prosecution, or to dismiss the information on those grounds, or to permit the introduction of evidence relevant to these claims.

### I. BACKGROUND

This Petition arises out of the bench trial of respondent Daniel Choi by Magistrate Judge Facciola for failure to obey a lawful order under 36 C.F.R. § 2.32(a)(2), a Class B misdemeanor. Respondent and 12 other individuals handcuffed themselves to the White House fence on

November 15, 2010, in protest of the armed forces' then-current "Don't Ask, Don't Tell" policy.[1] The United States Park Police directed the protestors to leave the area three times,[2] and arrested the protestors following their continued non-compliance. The arrest was respondent's third in nine months, each for the same criminal conduct. The government offered the protestors deferred-sentencing agreements, pursuant to which the protestors would plead guilty to the charge of failure to obey a lawful order and the government would refrain from prosecution, subject to various conditions. Respondent's 12 co-protestors accepted the agreements; respondent did not.

On August 24, prior to the start of trial, the government became aware during conversation between counsel that respondent was considering a selective prosecution claim, based primarily on the fact that he had been arrested twice prior for similar conduct but had not faced federal prosecution for those offenses. At a status conference the next day, government counsel raised this issue with Magistrate Judge Facciola and argued that the respondent had to raise it in a pre-trial motion to dismiss; Magistrate Judge Facciola responded that he would consider the issue at trial. The following day, the government offered the respondent a deferred-prosecution agreement, pursuant to which the government would dismiss the complaint, subject to various conditions. The respondent declined the offer. The government filed a pre-trial motion in limine on the evening of August 28, the day before the start of trial, to prevent defense counsel from raising this issue. In the motion, the government argued 1) that a selective prosecution claim must be raised in a pre-trial motion to dismiss or is otherwise waived under

---

[1] The military's "Don't Ask, Don't Tell" policy directed servicemen and women to neither inquire nor volunteer information about the sexual orientation of other servicemen and women. The Pentagon formally repealed the policy on September 20, 2011, allowing openly gay individuals to serve in the armed forces. *See generally* Ed O'Keefe, " *'Don't ask, don't tell' ends in quiet, personal ways*," Washington Post, September 20, 2011.

[2] Respondent contends that the police issued orders to leave the sidewalk, and that the defendant, while chained to the White House fence, was not actually on the sidewalk but on the masonry base.

Rule 12(b)(3)(A), and 2) that the respondent failed to assert a *prima facie* case of selective prosecution.

Immediately prior to trial on the morning of August 29, 2011, the government requested that Magistrate Judge Facciola rule on the motion in limine. Government counsel again raised its argument that a selective prosecution claim is not a defense to the merits of the prosecution and must be raised pre-trial. Magistrate Judge Facciola continually referred to the issue as a defense and declined to rule on the motions. At that point, trial commenced. During trial, respondent presented evidence in support of his selective prosecution claim. Magistrate Judge Facciola on August 31 stated that he viewed the evidence as supporting a vindictive prosecution claim as opposed to a selective prosecution claim, that he would allow the respondent to further pursue the claim as a defense, and that he would ask for briefing on the issue at the conclusion of the trial. When asked by the government to clarify whether he would permit the defendant to pursue these claims as a defense on the merits, Magistrate Judge Facciola replied in the affirmative. At that point, Magistrate Judge Facciola asked the government whether it wished for him to stop the proceedings to allow the government to seek mandamus; the government agreed, and Magistrate Judge Facciola stayed the proceedings.

The government filed the instant Petition for Writ of Mandamus on September 12, 2011. The government seeks a writ of mandamus directing Magistrate Judge Facciola to 1) refrain from considering a defense of selective or vindictive prosecution, 2) refrain from allowing the defendant to introduce further evidence in support of such claims, 3) treat any motion to dismiss the prosecution based on such claims as waived, and 4) refrain from considering dismissal based on such claims sua sponte.

## II.     DISCUSSION

## A. Jurisdiction

Respondent argues that this Court lacks jurisdiction to issue a writ of mandamus directed to Magistrate Judge Facciola. Respondent cites no law expressly forbidding a district court from issuing a writ of mandamus to a magistrate of the same court, but instead relies primarily on the novelty of such a writ. Although this Court is unaware of any reported decision in which a district court issued a writ of mandamus to a magistrate judge, the rarity of such an order is not conclusive. Rather, the Court must undergo an analysis of the statutory bases for mandamus jurisdiction to determine whether a district court is so empowered.

Writs of mandamus are governed by two statutes. The first, more general statute, is the All Writs Act, 28 U.S.C. § 1651. That Act states:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

In turn, Congress has separately conferred jurisdiction on the district courts to entertain suits "in the nature of" mandamus in 28 U.S.C. § 1361:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Petitioner does not argue that 28 U.S.C. § 1361 grants the requisite authority. Although the text of the statute would seem to permit jurisdiction here – after all, magistrate judges are employees of the United States – § 1361 is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch. *See, e.g., Trackwell v. United States Government*, 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Service v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("[I]n enacting []§1361 . . . Congress was thinking solely in terms of the executive branch.") (Friendly, J.); *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir.

1992) (applying the rationale of *Eastland* to bar § 1361 action against bankruptcy court officers). A magistrate judge exercises Article I authority subject to the supervision of the district court, *see United States v. Raddatz*, 447 U.S. 667, 681-84 (1980), and is not a member of the Executive branch. A district court thus may not issue a writ of mandamus to a magistrate judge pursuant to § 1361.

The All Writs Act, upon which petitioner relies, is most commonly invoked by a federal circuit court of appeals to issue a writ of mandamus to a district court judge, or by the Supreme Court to issue a writ to a lower court judge. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) ("[T]he writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." (quotations omitted)); *id.* at 34 (noting that under the Act, "*courts of appeals* may issue a writ of mandamus . . ." (emphasis added)); *see, e.g., In re Papandreou*, 139 F.3d 247 (D.C. Cir. 1998) (issuing writ of mandamus to a district court). Key to a court's issuance of a writ of mandamus is that it be acting in support of its appellate jurisdiction. *Cf. Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 86 (1970) (holding that the Supreme Court can only issue a writ of mandamus "insofar as such writs are in aid of its appellate jurisdiction"). Thus, a federal court of appeals may not issue a writ of mandamus to a state court, because a federal court of appeals does not exercise appellate jurisdiction over any state court. *See, e.g., White v. Ward*, 145 F.3d 1139, 1140 (10th Cir. 1998); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (noting that, unlike the federal courts of appeals, the Supreme Court does retain appellate jurisdiction over state courts). Likewise, a federal court of appeals may not issue a writ of mandamus to another federal court of

appeals, or to a district court outside of the court of appeals' circuit. *See Air Line Pilots Assn., Int'l v. Dep't of Transp.*, 880 F.2d 491, 503 (D.C. Cir. 1989).

Tellingly, while Federal Rule of Appellate Procedure 21(a)(1) refers explicitly to "a writ of mandamus . . . directed to a court," and while Supreme Court Rule 20 governs petitions for extraordinary writs "in aid of the Court's appellate jurisdiction," neither the federal rules of civil nor criminal procedure refers to appellate mandamus. Indeed, Federal Rule of Civil Procedure 81(b) purports to abolish the common-law writ of mandamus. And while the Circuit Court of Appeals for the D.C. Circuit has held that § 1361 permits district courts to entertain jurisdiction "over actions in the nature of mandamus" notwithstanding Rule 81(b), *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (quotations omitted), the Court indicated that the Rule "long ago abolished the writ of mandamus in the district courts (*although not in the appellate courts*)," *id.* (emphasis added). Thus, under D.C. Circuit precedent, it is unclear whether any powers of appellate mandamus that a district court may have held under the All Writs Act survived the adoption of Rule 81(b).

Reference to a district court's purported power of appellate mandamus seems oxymoronic, as a district court is a trial level court in the federal judicial system. It generally lacks appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts. *See, e.g., Lewis v. Green*, 629 F. Supp. 546, 553 (D.D.C. 1986) (finding that the Court lacked authority to issue a writ of mandamus to a judge in another district court, and that such a writ "may be issued only by a superior court"); *Fabuluje v. Sanders*, Civ. No. 01-992, 2001 U.S. Dist. LEXIS 13231, *4 (N.D.Tex. June 20, 2001) (holding that a district court lacks authority to issue "a writ of mandamus to another judge of the same court"). However, this case is of the unique posture where this Court is being asked to review the conduct of a magistrate

judge in a quasi-appellate capacity. Although the nature of the district court-magistrate relationship is usually not analogous to the relationship between a court of appeals and a district court, this case presents important distinctions.

Generally, a magistrate judge's acts are subject to the full supervisory authority and control of the district court. *Cf. Raddatz*, 447 U.S. at 681-84. Thus, when a district court judge considers objections to a magistrate judge's ruling, *see* Local Criminal Rule 59.1, 59.2, the exercise is not an "appeal." The magistrate judge is not an inferior court, and the district court does not stand in an appellate capacity over the magistrate. But where, as here, a magistrate judge conducts a trial of a federal misdemeanor offense pursuant to 18 U.S.C. § 3401, Federal Rule of Criminal Procedure 58, and Local Criminal Rule 58, the matter is more complicated. Section 3401 grants magistrate judges "jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district" if the defendant does not object. 18 U.S.C. § 3401(a). In turn, Federal Rule of Criminal Procedure 58 governs the process. Fed. R. Crim. P. 58(g)(2)(A) covers "[i]nterlocutory [a]ppeal[s]," allowing parties to "*appeal* an order of a magistrate judge to a district judge . . . if a district judge's order could similarly be appealed" (emphasis added). Similarly, Local Rule 58(e) refers to "[a]ppeal from a magistrate judge's order or judgment." In a federal misdemeanor case, unlike in other settings, a district court judge does not refer the matter to a magistrate, and does not exercise blanket supervisory powers; to the contrary, the district court judge cannot intervene prior to a final judgment unless a court of appeals could so intervene. In that sense, the magistrate judge's direction of a misdemeanor trial more closely appears to constitute a separate "court" than do most magistrate functions.

Further complicating the matter is the occasional willingness of courts to rely on the All Writs Act to issue writs of mandamus to Article I agencies over which the court retains appellate jurisdiction. *See Cox v. W.*, 149 F.3d 1360, 1364 (Fed. Cir. 1998) (approving of Court of Veterans Appeals issuance of writ to Board of Veterans' Appeals). In addition, district courts have occasionally, in an appellate capacity, issued writs of mandamus directed to bankruptcy courts. *See, e.g., In re Calore Express Co.*, 266 B.R. 727, 733 (D. Mass. 1998); *cf. In re Pappas & Rose, P.C.*, 229 B.R. 815, 818 (W.D. Okla. 1998) (determining that a district court lacks mandamus jurisdiction over a bankruptcy court decision unless the district court's appellate jurisdiction is invoked). Thus, although the All Writs Act would generally not permit a district court judge to issue a writ of mandamus to an Article I-created magistrate judge exercising authority subject to the supervision of the district court, the situation in which a magistrate judge conducts a misdemeanor criminal trial creates a situation to which the All Writs Act may apply.

Cases petitioner cites provide little guidance. In *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), the district court considered both a petition for writ of mandamus to the magistrate judge and an appeal from the magistrate judge's order denying a motion to unseal portions of a plea agreement. The district court denied the petition and affirmed the order; the D.C. Circuit vacated the affirmance and the magistrate judge's order. *Id.* at 292. The D.C. Circuit did not pass on the propriety of the filing of the petition in the district court. Similarly, in *United States v. Lee*, 786 F.2d 951 (9th Cir. 1986), the Ninth Circuit expressly did not determine whether it is proper to file a petition for writ of mandamus with a district court. *Id.* at 956 ("We need not reach that issue.") Finally, in *Califano v. Moynahan*, 596 F.2d 1320 (6th Cir. 1979), the Sixth Circuit declined to issue a writ of mandamus when the petitioner could have moved for the

district judge to vacate the magistrate's order or to obtain a report and recommendation from the magistrate. *Id.* at 1322. None of these cases squarely addresses the issue at hand.

*United States v. Ecker*, 923 F.2d 7 (1st Cir. 1991), most directly advances petitioner's case. There, the First Circuit noted that the defendant could have obtained review of a magistrate's commitment order from the district court by moving for reconsideration in the district court. Following that conclusion, the Court continued: "If [defendant] wanted a writ of mandamus directing the magistrate to rescind his commitment order . . . he should have directed his argument to the district court originally." *Id.* at 9. It is unclear whether by "directed his argument to the district court originally," the Court was referring to filing a petition for writ of mandamus with the district court, or to the simple motion for reconsideration to which it earlier alluded. Assuming the former, this quotation, which cites to *Califano*, appears to approve of the practice of filing a petition for writ of mandamus to a magistrate judge with a district court. However, *Califano* does not stand for that proposition, and *Ecker* is bereft of further reasoning as to why the district court would be the appropriate venue.

In the absence of any case squarely finding jurisdiction in a district court to issue a writ of mandamus pursuant to the All Writs Act to a magistrate judge, the Court is wary of finding the existence of such jurisdiction. Although exceptions exist, the All Writs Act generally applies only when a true superior court – the Supreme Court, or a circuit court of appeals – issues a writ of mandamus to a true inferior court, primarily a district court. Further, the D.C. Circuit's indication in *Cheney* that district courts' authority to issue writs of mandamus under the All Writs Act has been abrogated provides this Court further reason not to purport to exercise such jurisdiction. But although this Court is hesitant to do so, the analogy between a federal circuit court of appeals and a district court on the one hand, and a district court and a magistrate on the

other, is inescapable in misdemeanor cases such as these where the magistrate judge exercises full authority over the trial, subject to review of the district court only insofar as a circuit court of appeals could exercise review over a district court trial. In this situation, as when a district court reviews a bankruptcy court order, *see In re Calore Express Co.*, 266 B.R. at 733, the district court is acting as an appellate body. The D.C. Circuit's language in *Cheney*, while appearing to deem mandamus jurisdiction non-existent at the district court level, did not seem to take account of the limited but important appellate functions that a district court occasionally fulfills. Accordingly, the Court holds that the All Writs Act permits district courts to issue writs of mandamus to magistrate judges when, under the applicable statutes and rules, the district court sits in an appellate capacity vis a vis the magistrate judge.

## B. Merits

The issuance of a writ of mandamus pursuant to the All Writs Act "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. United States District Court*, 542 U.S. 367, 380 (2004) (quotations omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Id.* (quotations and internal citations omitted). In order to establish a right to this rare form of relief, a petitioner must show 1) that he has "no other adequate means to attain the relief he desires," in order to prevent use of the writ as an end run around the normal appeals process, *id.* at 380-81, 2) that his "right to issuance of the writ is clear and indisputable," *id.* at 381 (quotations omitted), and 3) that the lower court has a clear duty to act, *United States v. Monzel*, 641 F.3d 528, 532 (D.C. Cir. 2011). Furthermore, even if the petitioner is able to satisfy the above criteria, the Court must still avail itself that, "in the exercise of its discretion . . . the writ is appropriate under the circumstances." *Id.*

*1. No adequate means*

Petitioner seeks essentially two types of mandamus relief. First, petitioner seeks an order preventing Magistrate Judge Facciola from considering selective or vindictive prosecution as a defense on the merits. Second, petitioner seeks to bar Magistrate Judge Facciola from dismissing the information based on selective or vindictive prosecution. As to the first form of requested relief, petitioner indeed has no other adequate means of relief other than a writ of mandamus. Once the prosecution in respondent's bench trial called its first witness, respondent's rights against double jeopardy attached, *Serfass v. United States*, 420 U.S. 377, 388 (1975). If Magistrate Judge Facciola enters a judgment of acquittal in favor of respondent, petitioner will be unable to appeal that decision. *Yeager v. United States*, 129 S. Ct. 2360, 2366 (2009). Thus, mandamus is the only means by which petitioner can obtain review of its argument that selective and vindictive prosecution are not defenses on the merits to a prosecution.

Respondent counters by asserting that petitioner could have obtained review of Magistrate Judge Facciola's decision to permit a selective or vindictive prosecution defense in this Court. However, a party may only appeal a Magistrate Judge's order in a misdemeanor criminal trial if it could appeal a similar order rendered by a district court judge. Fed. R. Crim. P. 58(g)(2)(A). The government may only pursue an interlocutory appeal from a district court order in a criminal case in limited circumstances, such as where the order dismisses an indictment or information, grants a new trial, excludes or suppresses evidence, or grants the defendant release. 18 U.S.C. § 3731. Neither the Magistrate Judge's denial of the prosecution's motion in limine, nor the Magistrate Judge's mid-trial decision to allow the respondent to pursue a selective or vindictive prosecution defense, is an order from which the government could take an interlocutory appeal – the Magistrate Judge's order did not exclude or suppress any evidence

or dismiss the information. Respondent posits no other procedural posture, and the Court is unaware of any, by which petitioner could otherwise seek review of this issue. Mandamus is thus petitioner's only option.

Petitioner's other desired form of relief is a directive to Magistrate Judge Facciola that respondent has waived any selective or vindictive prosecution argument in support of dismissal. As to a sua sponte dismissal by Judge Facciola, the government would indeed lack an alternate form of relief. The government may only appeal from a dismissal of an indictment or information under 18 U.S.C. § 3731 if such appeal would not conflict with the defendant's double jeopardy rights. Accordingly, petitioner can only appeal an order by Magistrate Judge Facciola sua sponte dismissing the information against respondent to this Court if such an appeal would be consistent with the Double Jeopardy Clause. While the constitutional protection against double jeopardy is not a bar to a government appeal from the dismissal of an indictment or information upon motion of the *defendant, United States v. Scott*, 437 U.S. 82, 101 (1978), double jeopardy protects a defendant from retrial when the defendant does not consent to the dismissal. *See id.; United States v. Pharis*, 298 F.3d 228, 244 (3d Cir. 2002) (en banc). Defense counsel indicated at oral argument that respondent would not consent to a dismissal. Such a dismissal would thus preclude further review of the issue.

Because respondent apparently would not consent to a dismissal of the information, it is unlikely that he will file a motion to dismiss on his own accord. Such a dismissal would be reviewable by this Court because, under *Scott*, double jeopardy would not bar a subsequent prosecution. Normally, the availability of this alternate means of review would prevent this Court from issuing a writ of mandamus preventing respondent from filing a motion to dismiss on this basis. However, the requirement that there be no adequate means of review may be waived

if the petitioner will suffer irreparable harm as a result of a delay in review. *Banks v. Office of the Senate Sergeant-at-Arms*, 471 F.3d 1341, 1350 (D.C. Cir. 2006). Here, petitioner alleges that it would incur significant expense in conducting discovery, and responding to discovery requests, regarding a selective or vindictive prosecution claim. Indeed, petitioner intimates that developing a response to such a claim could be so costly as to prohibit continued prosecution. Assuming that respondent has clearly and indisputably waived a motion to dismiss on these grounds, the Court agrees that petitioner would be irreparably harmed in having to disprove a legal claim that respondent is not entitled to make.

Respondent contends that petitioner will not be harmed because Magistrate Judge Facciola may ultimately convict respondent of the offense, notwithstanding the selective or vindictive prosecution defense. True enough. But the harm alleged here is not the potential erroneous dismissal or acquittal; it is the expense required to disprove the claim. The decision to permit a selective or vindictive prosecution defense or dismissal need not necessarily be outcome-determinative in respondent's favor in order to be subject to a writ of mandamus. *Cf. La Buy v. Howes*, 352 U.S. 249, 260 (1957) (affirming circuit court of appeals' issuance of writ directing district court to vacate order referring antitrust cases for trial before a special master). Accordingly, even though petitioner would have a right to appeal a dismissal of the information if made on motion by respondent, the Court will not treat this as a bar to mandamus relief.

### 2. Clear and indisputable right to issuance, and clear duty to act

In addition to showing a lack of alternative means for review of the decision complained of, petitioner must show a clear and indisputable right to issuance of the writ and a clear duty on the part of the lower court to act. As to the issue of the use of selective or vindictive prosecution as a defense on the merits, petitioner is successful. Claims of selective and vindictive

prosecution are indisputably not "defense[s] on the merits to the criminal charge itself, but . . . independent assertion[s] that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983); *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (applying *Armstrong* to vindictive prosecution claim). Such claims do not bear on the fact of a defendant's guilt or innocence, but instead allege a bar against prosecution. Indeed, while respondent repeatedly refers to the claim as a "defense," he concedes that it is not a defense *on the merits*. There is no legal basis for Magistrate Judge Facciola to enter a judgment of acquittal on the grounds that the government selectively or vindictively prosecuted respondent, and thus the magistrate has a clear duty to refrain from entering such an acquittal. Petitioner is thus entitled to a writ of mandamus on this issue.

Respondent argues that the D.C. Circuit approved the use of a selective prosecution defense on the merits in *United States v. Washington*. Reliance on that case is misplaced. In *Washington*, the defendant was convicted for submitting forged birth certificates in connection with a passport application. The defendant on appeal argued that she was selectively prosecuted because she was a member of the Black Hebrews, a religious group then engaged in settlement disputes with the Israeli government. The defendant contested the trial court's resolution of the issue, arguing that a claim of selective prosecution was an issue of fact for resolution by the jury. In affirming the trial court, the D.C. Circuit noted that "the issue of selective prosecution is one to be determined by the court . . . as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." *Washington*, 705 F.2d at 495. The case in no way can be read to support the notion that a successful selective prosecution claim constitutes a basis for an acquittal.

Petitioner has additionally shown a clear and indisputable right on its part, and a duty on the part of Magistrate Judge Facciola, regarding a dismissal on the merits. Petitioner asserts that, under the Federal Rules of Criminal Procedure, a selective or vindictive prosecution claim normally must be made prior to trial. Petitioner is correct. Rule 12(b)(3)(A) requires defendants to raise "a motion alleging a defect in instituting the prosecution" before trial commences. Under *Armstrong* and *Washington*, a claim of selective or vindictive prosecution is a claim that alleges a defect in instituting the prosecution – namely, that the government is bringing the prosecution for constitutionally forbidden reasons. These claims thus must be made prior to the commencement of trial, or they are by default deemed waived under Rule 12(e). *See, e.g.*, *United States v. Huber*, 404 F.3d 1047, 1054-55 (8th Cir. 2005). Because respondent did not submit a pre-trial motion to dismiss on the basis of these claims, he generally could not raise them following the commencement of trial.

It is true that Rule 12(e) contains a provision stipulating that, "[f]or good cause, the court may grant relief from the waiver." Magistrate Judge Facciola would therefore have authority to permit a mid-trial motion to dismiss the information on the basis of selective or vindictive prosecution were he to determine that good cause for the delay existed. Petitioner vigorously asserts that no good cause exists, primarily because respondent was aware of the basis for these claims prior to the start of trial. This Court, seeing absolutely no basis in the record for a finding of good cause, agrees. Respondent tries to establish such cause by alleging that he could not have made out a prima facie case of selective or vindictive prosecution prior to the development of trial testimony. Respondent additionally appears to make an argument in support of good cause based on defense counsel's mistaken impression that, because Rule 12(e)'s text treats as waived Rule 12(b)(3) motions "not raised by the deadline the court sets under Rule 12(c),"

Magistrate Judge Facciola's failure to set a Rule 12(c) deadline earlier than the trial date permitted defense counsel to make Rule 12(b)(3) motions *after* the commencement of trial. These arguments defy reasonable belief, and thus Magistrate Judge Facciola could not find good cause to excuse a Rule 12(e) waiver. The magistrate thus has a clear duty not to consider a motion to dismiss on the basis of selective or vindictive prosecution, either sua sponte or on motion by respondent.

### 3. *Appropriate under the circumstances*

It appears to the Court that, as to all its forms of requested relief, petitioner has established a right to a writ of mandamus. The Court is further satisfied that, under the circumstances, issuance of the writ is appropriate. Although the issuance of a writ of mandamus is an "extraordinary remedy," *Cheney*, 542 U.S. at 380, and although this Court approaches the decision to issue the writ with reluctance and "with great caution," *Banks v. Office of the Senate Seargant-at-Arms*, 471 F.3d 1341, 1350 (D.C. Cir. 2006), the Court is satisfied that this case presents a rare set of circumstances requiring this Court's intervention. Magistrate Judge Facciola has indicated that he may enter a judgment of acquittal in favor of respondent for reasons wholly unrelated to the merits of the respondent's defense. Such a decision would be unreviewable, since jeopardy has attached. Further, Magistrate Judge Facciola has indicated that he may dismiss the information, sua sponte or on motion by respondent, on the basis of a legal argument that respondent has waived. Although a motion by respondent to dismiss would be reviewable, this Court sees no need to force petitioner to undergo the expense of responding to a claim that the Federal Rules of Criminal Procedure bar respondent from making.

In attempting to show that the equities are in his favor, respondent alludes to the alleged strength of his claim, and argues that petitioner has "dirty hands" because its motion in limine

was filed close to the start of trial and because of delay in response to discovery requests. But none of these assertions would render mandamus inappropriate here. The law is straightforward: selective and vindictive prosecution claims are not defenses on the merits but go to the constitutionality of the prosecution, and motions to dismiss based on defects in the institution of criminal proceedings must be brought prior to the start of trial unless good cause exists otherwise. In the exceedingly rare set of circumstances posed here, mandamus is the only credible option to enforce the law.

## III.   CONCLUSION AND ORDER

Petitioner is entitled to a writ of mandamus, and issuance of a writ is appropriate under the circumstances. The Court will therefore grant the Petition, and issue the writ.

A separate order shall issue as of this date.

_10/11/11_
Date

ROYCE C. LAMBERTH
Chief Judge
United States District Court