**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1356-KuFTa |
| ) | |
| JENNIFER ANN EVANS, ) | Bk. No.   2:14-bk-22827-VZ |
| ) | |
| Debtor. ) | Adv. No.  2:14-ap-01619-VZ |
| _____ ) | |
| JEFFREY TRAINOR, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| JENNIFER ANN EVANS, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on May 18, 2017
at Pasadena, California

Filed – August 9, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent Zurzolo, Bankruptcy Judge, Presiding

Appearances:     Peter Alan Davidson of Ervin Cohen and Jessup
                 argued for appellant; Dennis McGoldrick argued for
                 appellee.

Before: KURTZ, FARIS and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Jeffrey Trainor appeals from a judgment after trial in favor of Chapter 7[1] debtor Jennifer Ann Evans, which judgment denied him any relief on his objection to discharge complaint.

The bankruptcy court found that it had "significant issues" with Evans' credibility and also found that the bankruptcy schedules Evans submitted on her own behalf and on behalf of her wholly-owned company were among the worst the court had seen in 28 years on the bench – in terms of misstatements and omissions. The bankruptcy court nonetheless ultimately found that Evans did not harbor an intent to deceive her creditors or the bankruptcy trustee when she knowingly made the material misstatements and omissions.

Under the applicable clearly erroneous standard, we cannot say that the bankruptcy court's decision finding no intent to deceive was illogical, implausible or without support in the record. Accordingly, we AFFIRM.

**FACTS**

At one time, Trainor had both personal and business relationships with Evans. Trainor initially was Evans' business partner, but the parties later took steps to recharacterize Trainor's equity investment in Evans' clothing manufacturing company – Evans Production Co-Op LLC – as a loan. Later, when Evans did not repay the loan, Trainor sued the Co-Op in state

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

court to recover the principal loan amount, interest and attorney's fees.

This litigation ultimately led to the Co-Op filing a chapter 11 petition. Trainor filed a motion to dismiss or convert the Co-Op's chapter 11 case, which in turn resulted in the conversion of the Co-Op's bankruptcy case to chapter 7. The motion to dismiss or convert was based in large part on asserted errors and omissions in the Co-Op's bankruptcy schedules and its statement of financial affairs. Even though Evans knew of many of the errors and omissions in the Co-Op's schedules and statement of financial affairs by no later than February 2014 – when the Co-Op's § 341(a) meeting of creditors was held – Evans only filed amendments to the Co-Op's bankruptcy commencement documents after Trainor filed his May 2014 motion to dismiss or convert.

In July 2014, around the same time Trainor's motion to convert was granted, Evans filed her personal bankruptcy case. Trainor filed his objection to discharge complaint in September 2014. The sole relevant claim for relief sought to deny Evans her discharge based on §§ 727(a)(4)(A) and 727(a)(7) and based on the numerous errors and omissions in the Co-Op's bankruptcy commencement papers and in Evan's personal bankruptcy commencement papers.[2]

Roughly one year later, Trainor filed a summary judgment motion which resulted in summary adjudication in favor of Trainor

---

[2]Trainor's complaint also stated a claim for relief under § 727(a)(6), but he has not challenged on appeal the bankruptcy court's ruling denying him relief under that subsection.

on all issues except for those regarding Evans' state of mind –
whether she knowingly and fraudulently made the misstatements and
omissions in her own schedules and statement of financial affairs
and in the Co-Op's filings.  As the bankruptcy court put it:

> Evans made multiple false statements under oath of
> material facts in Co-op's Schedules and Statement of
> Financial Affairs, its Amended Schedules and in her own
> Schedules; however, whether Evans made the statements
> with fraudulent intent is a controverted issue of
> material fact which must be determined at trial . . . .

Findings Of Fact And Conclusions Of Law In Support Of Order On
Motion For Summary Judgment Or, In The Alternative, For Summary
Adjudication Of Issues (Nov. 23, 2015) at 14:6-9.[3]

The findings and conclusions contained a lengthy listing of
specific, admitted misstatements and omissions from Evans' and
the Co-Op's bankruptcy commencement documents.  Most of these
same admissions were carried forward as admitted facts in the
parties' joint pretrial stipulation.[4]

After a one-day trial on the state of mind issues, at which
only Evans testified, the bankruptcy court orally stated its
findings of fact from the bench.[5]  The bankruptcy court first

---

[3]Neither party included the summary judgment findings of
fact and conclusions of law in their excerpts of record.  But we
can take judicial notice of this document's filing and contents.
O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d
955, 957–58 (9th Cir. 1989); Mullis v. Bankr. Ct., 828 F.2d 1385,
1388 & n.9 (9th Cir. 1987).

[4]The specific misstatements and omissions are identified in
the discussion section set forth below.

[5]The judgment refers to written findings of fact and
conclusions of law, but there were no such written findings and
conclusions issued after trial.  Perhaps the bankruptcy court was
(continued...)

4

gave a general assessment of Evans' credibility. Without specifying precisely on which subjects it found Evans credible and which it did not, the court stated that Evans' credibility fell somewhere in the middle of the pack in terms of witnesses who had testified before the court. At the same time, the court also stated it had "significant issues" concerning Evans' credibility. The court offered the following explanation in support of its general credibility finding:

> There are many witnesses who have a very difficult time answering the question that is asked of them. They attempt to avert or evade the question and offer sometimes an explanation, but sometimes not even an explanation, an attempt to shunt away from the question itself and to place blame or responsibility for the target of the question on somebody else and you [Evans] did that repeatedly.

Hr'g Tr. (Sept. 21, 2016) at 123:6-13.

Next, the bankruptcy court noted that the purpose of the trial was to enable the court to determine whether Trainor could establish, by a preponderance of the evidence, that Evans knowingly and fraudulently made the admitted misstatements and omissions.

The court found that Evans knew that at least several of her material misrepresentations were false when she made them – particularly those regarding the Co-Op's income, the IRS's levies on property of the Co-Op, the amounts of the IRS's claims, and insider payments from the Co-Op to herself and her mother. The

[5](...continued)
referring to the findings and conclusions it entered when it granted summary adjudication in favor of Trainor. Regardless, the key findings we must examine were made orally on the record, immediately following the trial.

court specifically pointed to: (1) Evans' protestations of ignorance as to the existence of her misstatements and omissions; (2) her asserted reliance on others to fill in the schedules correctly; and (3) her repeated inability to "notice" the extant defects in the documents when she reviewed and signed them under penalty of perjury. The bankruptcy court indicated that these statements and conduct were inexplicable, not credible, reckless or a combination of all three. On that basis, the court determined that Evans knowingly made at least some of the material misstatements and omissions.

On the same evidence, however, the bankruptcy court declined to find an intent to deceive. The court gave significant weight to what it perceived as a lack of motive. As the court explained:

> I looked very carefully in trying to understand what advantage or benefit Ms. Evans would gain from looking at all of these false statements, especially in light of the fact that she knew she was being scrutinized, not only by Mr. Trainor but by the IRS, which was a precipitating factor in the Co-op filing. I mean sometimes when people are chased by creditors they lie and hide assets, but I just don't see that kind of non-disclosure or false statement of fact here that leads to the inference that she acted fraudulently.

Hr'g Tr. (Sept. 21, 2016) at 127:18-128:2.

The bankruptcy court conceded that it only could recall a few instances in 28 years on the bench when it had seen worse examples of misstatements and omissions in schedules and statements of financial affairs. The bankruptcy court further acknowledged Evans' continuing obligation to correct the documents once she admitted to learning of their inaccuracy and her failure to do so. Notwithstanding these additional factors,

6

the court ultimately found that "[i]t's very close, but I just don't see enough there to draw that inference" that Evans acted fraudulently.  Hr'g Tr. (Sept. 21, 2016) at 128:17-18.

The bankruptcy court entered its judgment in favor of Evans on October 6, 2016, and Trainor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it denied Trainor relief on his claim under §§ 727(a)(4)(A) and 727(a)(7)?

## STANDARDS OF REVIEW

In objection to discharge appeals: "(1) the [bankruptcy] court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004) aff'd, 212 Fed. Appx. 589 (9th Cir. 2006)).

Whether a debtor has the requisite fraudulent intent is a question of fact reviewed under the clearly erroneous standard. See In re Retz, 606 F.3d at 1197.  Under that standard, we only can reverse if the bankruptcy court's finding was illogical, implausible or without support in the record.  Id. at 1199.

7

**DISCUSSION**

Under § 727(a)(4)(A), the bankruptcy court must deny the debtor a discharge when the debtor knowingly and fraudulently makes a false oath or account in or in connection with the case. Misstatements and omissions in the debtor's bankruptcy schedules or statement of financial affairs can qualify as false oaths for purposes of § 727(a)(4)(A). In re Retz, 606 F.3d at 1196 (citing Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd and adopted, 578 F.3d 1167, 1168 (9th Cir. 2009)). Among other things, § 727(a)(7) bars the debtor's discharge when, during the pendency of the debtor's case, or within one year of the debtor's petition filing, the debtor engages in the same type of conduct prohibited by § 727(a)(4)(A) in connection with another bankruptcy case.

A plaintiff bringing a claim under § 727(a)(4)(A) must prove by a preponderance of the evidence that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Retz, 606 F.3d at 1197 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)). To establish a § 727(a)(7) claim based on the same type of conduct, the same elements logically are required, albeit the "false oath" must be made in another bankruptcy case.

Here, the only issue in dispute on appeal is whether Evans fraudulently made the bankruptcy commencement document misstatements and omissions in her own bankruptcy case and in the Co-Op's case. All of the other elements in support of Trainor's §§ 727(a)(4)(A) and (a)(7) claims were established during the

8

course of the adversary proceeding by summary adjudication or after trial, and Evans has not cross-appealed the bankruptcy court's other rulings.

The fraudulent intent required is the same type of actual fraudulent intent that would be required to prove a common law fraud claim. In re Roberts, 331 B.R. at 884. Constructive fraudulent intent will not suffice. Id. Accord In re Khalil, 379 B.R. at 172. To establish the debtor's fraudulent intent, the plaintiff must show: (1) that the debtor made the misstatements or omissions; (2) that he or she knew they were false at the time he or she made them; and "(3) that he [or she] made them **with the intention and purpose of deceiving the creditors**." In re Khalil, 379 B.R. at 173 (citing In re Roberts, 331 B.R. at 884) (emphasis added).

This appeal hinges on the third factor. The bankruptcy court's ruling on the other § 727(a)(4)(A) elements established the existence of the first two intent factors. Seldom do fraudfeasors break down and admit that they intended to deceive. Instead, intent to deceive typically is inferred from circumstantial evidence regarding the debtor's conduct, demeanor and the nature and extent of his or her misstatements and omissions. In re Roberts, 331 B.R. at 884. For instance, a pattern of falsity, a reckless indifference to the truth and a failure to amend bankruptcy commencement documents to correct known errors and omissions all can be probative of intent to deceive – but none of these types of conduct, in isolation, is the equivalent of an intent to deceive. See In re Khalil, 379 B.R. at 174-76. Indeed, in Khalil, this panel adopted the

9

reasoning from Garcia v. Coombs (In re Coombs), 193 B.R. 557 (Bankr. S.D. Cal. 1996), which stated in part:

> Neither sloppiness nor an absence of effort by the debtor supports, by itself, an inference of fraud. Courts which hold otherwise are simply devising a court-made prophylactic rule that the debtor must make substantial effort to provide accurate and complete schedules. Had the Congress intended to make such a rule, it could have done so easily . . . .
>
> The essential point is that **there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors** or the estate. For instance, **multiple omissions of material assets or information may well support an inference of fraud if** the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that **there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal**.

In re Coombs, 193 B.R. at 565 (emphasis added).

That being said, we also stated in Khalil that, while proof of the debtor's motivation to deceive can be probative of the debtor's intent to deceive, such proof is not a pre-requisite for finding an intent to deceive. As we explained in Khalil:

> Motive can support a finding of knowing and fraudulent intent, but it is not indispensable. A bankruptcy court might find that a debtor's reckless indifference to the truth is part of an attempt to fly "below the trustee's radar screen" . . . or to protect family or friends from intrusive discovery or preference or fraudulent transfer actions, or simply to make investigation difficult for the bankruptcy trustee or creditors. Alternatively, the court might never know the debtor's motive, but the number of misstatements or omissions, or the size or nature of a single one, might suffice to support a finding that a debtor knowingly and fraudulently made a false oath or account.

In re Khalil, 379 B.R. at 176 (citing Hansen v. Moore (In re Hansen), 368 B.R. 868, 878 (9th Cir. BAP 2007)).

On appeal, Trainor argues that the bankruptcy court committed an error of law by effectively requiring a showing of

10

Evans' motivation for allegedly wanting to deceive her creditors and the Co-Op's creditors. We understand why Trainor makes this argument. When the bankruptcy court declined to find an intent to deceive, it distinguished this case from other cases where an intent to deceive had been found by noting the absence, here, of any apparent advantage or benefit that Evans might have derived from the nature and extent of the misstatements and omissions she made.

Even so, we simply do not read the bankruptcy court's reasoning as based on a per se rule that it would not or could not find an intent to deceive absent an apparent motivation for deception. Instead, when read in context, we understand the court's reasoning to mean that, given the facts and circumstances of this particular case, including Evans' testimony, her demeanor on the stand, and the nature and extent of her admitted misstatements and omissions, and because it did not perceive anything in the misstatements and omissions suggesting that Evans wanted to conceal the true facts from her creditors or the Co-Op's creditors, the court could not find an intent to deceive. In this sense, the bankruptcy court's reasoning here echoes the reasoning Khalil adopted from Coombs; the court's reasoning did not impose motive to defraud as a prerequisite to finding an intent to deceive – as Khalil warned against.

Alternately, Trainor argues on appeal that the bankruptcy court's factual findings that Evans had no motive to defraud and no intent to deceive were clearly erroneous.

We acknowledge that there was ample evidence in the record that would have supported findings of a motive to defraud and an

11

intent to deceive. As the bankruptcy court pointed out, Evans' bankruptcy filing and the Co-Op's bankruptcy filing were among the worst bankruptcy filings the court had ever seen in terms of errors and omissions. The bankruptcy court also correctly recognized that Evans' failure to correct the Co-Op's and her own schedules by amendment also could help support a finding of intent to deceive. On top of these circumstances weighing in favor of a fraudulent intent finding, there were the misstatements and omissions themselves.

Some of the misstatements and omissions seem relatively innocuous in terms of assessing Evans' motive and intent. These include: (1) an omission of a minor balance in the Co-Op's bank account; (2) deviations in the valuing of the Co-Op's inventory and furniture; (3) the failure to report one lawsuit against the Co-Op; (4) the failure to report one or two executory contracts; (5) an error in the listing of the Co-Op's twenty largest creditors; and (6) the failure to correctly report in the Co-Op's bankruptcy commencement documents Evans' personal items held at the Co-Op. None of these misstatements and omissions are necessarily indicative of fraudulent motive or an intent to deceive.

But there were a number of other misstatements and omissions that could be considered quite indicative of fraudulent motive and intent to deceive. These include: (1) erroneous reporting of the Co-Op's 2012 "business income" as $60,061.00 when it actually was $734,963.52; (2) erroneous reporting of the Co-op's 2013 "business income" as $52,188.00 when it actually was $707,540.00; (3) numerous unreported out-of-the-ordinary-course transfers and

12

payments from the Co-Op to Evans during the two years prior to the Co-Op's bankruptcy; (4) omission or erroneous reporting of payments to other family members; (5) omission from the Co-Op's schedules of the Co-Op's claims against Evans; (6) scheduling of Evans as a creditor of the Co-Op when she was not a creditor; (7) Evans not scheduling the Co-Op as one of her creditors; (8) erroneous reporting of the IRS's secured claim against the Co-Op in the amount of $253,678 when it actually was $116,302.34; (9) omitting the IRS's unsecured priority claim in the amount of $13,757.11; (10) misstating the amounts the Co-Op owed to Evans' mother, stepfather and grandmother; and (11) omitting from the Co-Op's schedules Evans' status as a co-debtor on a number of debts owed to the IRS, the Employment Development Department and others.

In terms of assessing Evans' motive and intent, there were yet other misstatements and omissions that fall somewhere in between the two extremes set forth above. These include: (1) omitting from the Co-Op's Schedule F some of its unsecured creditors; (2) failing to list any secured creditors on the Co-Op's amended schedules; (3) not listing a particular unsecured creditor – Richard Avila – who was paid postpetition for a prepetition debt; (4) not listing payments to a particular creditor – Dan Taylor – who was paid within the 90-day preference period; (5) erroneously identifying the date the Co-Op paid a law firm retainer as January 13, 2013, when the retainer actually was paid in 2014; and (6) mis-scheduling of the IRS's and Employment Development Department's claims as unsecured claims in Evans' personal schedules.

13

Our acknowledgment of the existence of substantial evidence permitting the bankruptcy court to reasonably infer Evans' motive to defraud and intent to deceive, however, does not mandate reversal. The critical question we must answer is whether, on the record presented, it was unreasonable for the court to infer that Evans did not have a motive to defraud and an intent to deceive despite all the evidence available that would have permitted such inferences. See generally United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc) (identifying third clearly erroneous factor as whether the subject finding is "without support in inferences that may be drawn from the record"). We hold that the bankruptcy court's inference that Evans had no motive to defraud or intent to deceive was not unreasonable.

Even though the bankruptcy court expressed some concern regarding the credibility of some of Evans' statements, it obviously credited Evans' testimony in which she expressed confusion over the meaning of a number of terms like "co-debtor," "insider" and "executory contract" and how that confusion negatively affected the information she provided in her schedules and statement of financial affairs. For instance, as result of her confusion, Evans did not disclose in her initial statement of financial affairs certain insider payments made to herself and her sister-in-law (who for a time was employed by the Co-Op as its bookkeeper). As Evans testified:

> I did not think of myself [or my sister-in-law] as an
> insider. I didn't understand the term. I thought an
> insider was -- it sounds naive, but I thought it was
> someone scandalous that you were passing things to. I
> didn't know it was myself as the CEO or the formal

14

bookkeeper who was paid formally. Trial Tr. (Sept. 21, 2016) at 80:7-12.

Similarly, the following colloquy between Evans and plaintiff's counsel demonstrates her confusion over the term executory contract and how that confusion led to conflicting answers regarding whether a certain advertising contract needed to be listed as an executory contract:

Q. When you amended the schedules in Schedule G, you didn't list MnM Publishing. Why was that?

A. . . . For the revised schedules, it would have been changed due to the attorney saying it needed to be done differently. I was very up front about what it was. I wasn't sure what -- how it should be handled and I took their advice on it and I signed based on their advice on filling out the schedules.

Q. But you knew that you did have an executory contract with MnM Publishing when –

A. I don't what an executive --

Q. -- when co-op filed bankruptcy, correct?

A. I still do not know what an executory contract is.

Trial Tr. (Sept. 21, 2016) at 64:3-65:2.

At bottom, time and time again, Evans in essence claimed ignorance, confusion, naivete, and haplessness as explanations for her many errors and omissions. The bankruptcy court obviously credited many of these explanations, as nothing else explains the bankruptcy court's finding on Evans' lack of deceitful intent. "'[W]henever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn. The findings of fact by a trial court must receive such a construction as will uphold, rather than defeat, its judgment.'" Brock v. Big Bear Market

15

No. 3, 825 F.2d 1381, 1384 (9th Cir. 1987) (quoting Wells Benz, Inc. v. United States, 333 F.2d 89 (9th Cir. 1964)).

As an appellate review panel, we are not entitled to substitute our view of the evidence for that of the bankruptcy court. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574. It makes no difference that we likely would have decided the case differently. Id. at 573. The limitations on our appellate review are clear: we cannot reverse unless one or more of the factual findings underpinning the bankruptcy court's decision were illogical, implausible or unsupported by the record. See In re Retz, 606 F.3d at 1199. We perceive no such reversible error here. The bankruptcy court considered all of the evidence before it, which included Evans' course of conduct, her knowledge that she was being aggressively pursued by both Trainor and the IRS, her numerous misstatements and omissions, her testimony at trial, her demeanor on the stand, her apparent level of financial sophistication (both as an individual and as a business person), her excuses for not providing more accurate bankruptcy commencement documents, and her sometimes mediocre credibility in that regard. The bankruptcy court effectively concluded that Evans had acted cavalierly but not with a motive to defraud or an intent to deceive. We cannot say that this conclusion was illogical, implausible or without support in the record, so we must affirm.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy

16

court's judgment after trial in favor of Evans.